Willie CHASTAIN, Charles Washington, Dennis Chastain, Mrs. Onyce Young, Thomas B. Jones, Jr., Jean Ann Jones, John Funkhouser and Trustees of Pleasant Hills Baptist Church v. Pat DAVIS or Randy Feierabend, as Agents for Max R. McGinnis, et al.

87-167                                                741 S.W.2d 632

Supreme Court of Arkansas
Opinion delivered December 21, 1987

*Charles L. Carpenter*, for appellants.

*Jim Hamilton* and *Francis D. Crumpler, Jr.*, by: *Francis D. Crumpler, Jr.*, for appellees.

JACK HOLT, JR., Chief Justice. This appeal is from an order of the Pulaski Circuit Court annexing the Crystal Hill/Maumelle Boulevard area of Pulaski County to the City of North Little Rock. The appellants contend the acquisition did not comply with various statutory requirements for the voluntary annexation of territory to a municipality. We disagree and affirm.

The appellees, Pat Davis and Randy Feierabend, as agents of the property owners, filed a petition in Pulaski County Court on February 4, 1986, seeking the voluntary annexation of the Crystal Hill/Maumelle Boulevard area to the City of North Little Rock. This petition was amended on April 8, 1986, correcting the property description in the original petition. The appellants are landowners in the area opposing the annexation. The annexation was approved by Pulaski County Judge Don Venhaus after a public hearing. Appellants appealed to the Pulaski Circuit Court. Following a hearing, the circuit court approved the annexation and entered its order accordingly. Appellants bring this appeal from that decision raising five issues.

Appellants first argue the proponents of a voluntary annexation "cannot rely upon petitions with an incorrect property description", noting the appellees filed a petition for annexation on February 4, 1986, containing the following property description:

> . . . thence turn northwesterly along the west Right-of-Way of Maumelle Blvd. for a distance of 718.0 feet to a point on the south line of the north half of Section 11, Township 2 North, Range 13 West; . . .

The description should have read as follows:

> . . . thence turn northwesterly along the west Right-of-Way of Maumelle Blvd. for a distance of 718.0 feet to a point on the south line of the north half of *SW¼ SE½* of Section 11, . . . (Emphasis added.)

Appellees subsequently amended their petition, supported by additional signatures of property owners, to correct the property description. The amended petition readopted all allegations and

signatures contained in the first petition.

The circuit court found that a majority of the owners of record who own the majority of the land signed the "Petition and amended Petition" and that the "Petition and amended Petition" were right and proper.

Ark. Stat. Ann. § 19-301 (Repl. 1980) provides:

> Whenever a majority of the real estate owners of any part of a county, contiguous to and adjoining any city or incorporated town, shall desire to be annexed to such city or town, they may apply by petition in writing to the county court of the county in which said city or town is situated, and shall name the person or persons authorized to act on behalf of the petitioners.

Although the statute does not specifically provide for amendments to a petition for annexation, there is nothing wrong with the court looking to the petition and the amended petition to ascertain whether or not a majority of the owners of record who own the majority of land, have in fact petitioned to be annexed and that the area has been sufficiently identified. Amended petitions for annexation have been considered by this court in the past. *Cantrell* v. *Vaughn*, 228 Ark. 202, 306 S.W.2d 863 (1957). In this instance, we find no fault or abuse in the amending of the petition since the area proposed for annexation was not changed or increased. Although the original petition contained an incorrect property description, the map attached thereto, which was also one of the exhibits at trial, properly and sufficiently described the property sought to be annexed. Certainly, the landowners signing the petition could determine from the map the proposed area for annexation. *Lee* v. *City of Pine Bluff*, 289 Ark. 204, 710 S.W.2d 205 (1986). The trial court's findings that the petition and amended petition comply with the statute are not clearly wrong. *Lewis* v. *City of Bryant*, 291 Ark. 566, 726 S.W.2d 672 (1987).

Appellants next argue the circuit court's judgment is void on its face because it repeats ten lines of the property description. The circuit court order approving the annexation repeated the following lines of the property description:

"corner of SE¼, SE¼ Section 12 and the NW corner NE¼

NE¼ Section 13, Township 2 North, Range 13 West; thence turn southerly along the west line of said NE¼ NE¼ a distance of 1,320.0 feet to the NE corner of the SW¼ NE¼ of Section 13; thence turn west along the north line of said SW¼ NE¼ Section 13 a distance of 1,320.0 feet to the NW corner SW¼ NE¼ Section 13; thence turn S. 07° 08′ W. a distance of 492.0 feet; thence turn S. 56° .26′ W. a distance of 493.0 feet; thence turn N. 50° 29′ W. a distance of 617.0 feet; thence turn N. 84° 59′ W. a distance of 478.0."

The circuit court's order could be corrected to delete the error pursuant to Ark. R. Civ. P. 60(a), without harm or prejudice to anyone.

Appellants further contend the appellees failed to meet two statutory requirements for annexation: sufficient notice of annexation and that the petitioning landowners owned a majority of the land to be annexed. On April 17, 1986, notice of the proposed annexation was printed in the *Arkansas Gazette*. Twenty-five lines of the notice were blanked out in some of the published copies. Nine of the lines were of the summary property description and another ten lines concerned the detailed property description. Appellants claim these mistakes rendered the notice insufficient. The appellees admit the error, but deny that it affected the sufficiency of the notice.

Ark. Stat. Ann. § 19-302 (Repl. 1980) states:

. . . Between the time of the filing of the petition and the date of the hearing, the petitioners shall cause a notice to be published in some newspaper of general circulation in the county; which notice shall be published once a week for three (3) consecutive weeks. . . . The notice referred to herein shall contain the substance of said petition, and state the time and place appointed for the hearing thereof.

An affidavit of James Bates, the manager of the Composing Department of the *Arkansas Gazette*, stated the printing error in the notice occurred in the first 6000 copies out of 125,000 printed. He further stated that "although it cannot be said affirmatively where such papers might have been delivered, such papers containing the slight error in the legal notice were not to have

been delivered in Pulaski County."

■ The statute requires notice in the county. Bates testified that the newspapers containing the error in the notice were for delivery outside the county. Therefore, we find no problem with the notice.

■ Appellants also claim appellees did not prove that the petitioning landowners owned a majority of the land to be annexed. Ark. Stat. Ann. § 19-301 requires a majority of the real estate owners of the land to be annexed to sign the petition. The statute defines the "majority of real estate owners" as "a majority of the total number of real estate owners in the area affected, provided such majority of the total number of owners shall own more than one-half [½] of the acreage affected." *See also Smalley* v. *City of Fort Smith*, 239 Ark. 39, 386 S.W.2d 944 (1965).

In the county court, appellees introduced a certificate by Leola Lambert on the behalf of Beach Abstract and Guaranty Co. which stated the petitioners "represent a majority of the total number of real estate owners in area and in number of owners and constitutes over 51% of the owners and area, . . ." At the circuit court hearing, Lambert was called to testify. Appellants claim her testimony impeached the certificate, leaving the acreage question unproven. That testimony follows:

Q Mrs. Lambert, in the course of your investigation, checking the records, what did you determine as to the percentages involved in this?

A Well, there was, I would say, sixty to seventy percent of the owners, but then I certified there was fifty-one percent.

Q At least fifty-one percent?

A Yes sir.

Q And, out of the owners that signed that petition, were you able to determine what percentage of acreage that they owned in this land, in this area?

A No, because I had no certification as to that, I would say approximately eighty to ninety percent of the

property itself.

Cross examination

Q  Mrs. Lambert, what is the total acreage involved?

A  I don't remember, Mr. Carpenter.

Q  Could you tell us exactly how many acres they had signatures for?

A  Not really, I can't. I haven't worked on this, as you know, in about nine months.

Appellants claim since Lambert denied that she certified the acreage question, that she only certified the number of owners and that she guessed that eighty to ninety percent of the property was represented by the petitioners, there was insufficient proof of the acreage question. However, the certificate states the majority requirement was satisfied, and Lambert's testimony was that a majority of the land proposed for annexation was represented by the petitioners, even though she could not recall the exact figures.

In support of her testimony, appellee introduced Exhibit 2, a map of the proposed annexed area which is color coded showing the landowners who signed the petition and those who did not. The map clearly shows that the majority of the landowners signed the petition. There was ample evidence to support the trial court's decision. *Lee* v. *City of Pine Bluff, supra.*

Appellants' fourth point on appeal is that the proposed area is not right and proper for annexation. Lands are proper for annexation if they are platted and held for sale or use as municipal lots; whether platted or not, if they are held to be brought on the market and sold as city property when they reach a value corresponding with the views of the owner; when they furnish the abode for a densely-settled community or represent the actual growth of the city beyond its legal boundary; when they are needed for any proper city purpose; and when they are valuable by reason of their adaptability for prospective city uses. *Vestal* v. *Little Rock*, 54 Ark. 321, 15 S.W. 891 (1891). Lands sought to be voluntarily annexed must meet the criteria. *Cantrell* v. *Vaughn, supra.* If a part of the proposed area does not meet one of these requirements, then the annexation of the entire area is

voided in toto. *Gay* v. *City of Springdale*, 287 Ark. 55, 696 S.W.2d 723 (1985); *City of Little Rock* v. *Findley*, 224 Ark. 305, 272 S.W.2d 823 (1954). Appellants have the burden of proof in showing the area should not be annexed. *City of Crossett* v. *Anthony*, 250 Ark. 660, 466 S.W.2d 481 (1971). The circuit court found the lands were right and proper for annexation. We must affirm the trial court's judgment if there is sufficient evidence to support it. *Lee* v. *City of Pine Bluff, supra.*

A general description of the land to be annexed was given in the testimony of Dan Clinton, North Little Rock City Engineer. He stated the proposed area is 1,500 acres. The land varies in contour and makeup. A rock quarry is on part of the land and on another part is the White Oak Bayou which backs up to the Arkansas River. There is some timberland, and some major streets and highways pass through the area. He further stated that White Oak Bayou is a floodway which cannot be developed.

The record contains a memo written by Marie Flickinger from the Pulaski County Department of Planning and Development to Judge Venhaus about the proposed annexation. In that memo she stated: "the description was adequate, it is contiguous to the City, there are pockets left out of the annexation, adjoining rights-of-way are included, all of the area east of I-430 is now served by North Little Rock Sewer, a new sewer district is being formed to serve the area west of I-430, the entire area is now being served by the Oak Grove Fire District." She further stated that "much of the area is floodway or floodplain, any roads across White Oak Bayou would have to be bridged. There is a very low population density through much of the area. City services to much of the area would have to travel by way of County roads."

Appellants claim the proposed area fails to meet the *Vestal* criteria in three ways. First, the area has an unusual and unnatural configuration, and as a result there is no real contiguity with the city. Appellants contend the city reaches the proposed area by way of two tiny strips of land: the intersection of I-430 and Maumelle Blvd., which connects the annexed area with the city only by the highway right-of-way and a narrow wooded strip between Crystal Hill Road and a box like tract on the extreme east side of the annexed area.

 We have rejected the use of tiny strips of land to reach

the larger area to be annexed. *Clark* v. *Holt*, 218 Ark. 504, 237 S.W.2d 483 (1951); *Park* v. *Hardin*, 203 Ark. 1135, 160 S.W.2d 501 (1942). In *Clark*, the area to be annexed was connected to the city by a strip 50 feet wide and 3,060 feet long which traversed a rough, hilly land. In *Park*, a strip along a U.S. Highway 4 miles long and ¼ mile wide was used by the city to reach the proposed area. Such a "shoestring" was not used in this case.

Contiguous lands are those which are not separated from the city by outside land. *Clark* v. *Holt, supra; Vestal* v. *Little Rock, supra.* Clinton testified the land is contiguous and Flickinger stated in her memo that the land was contiguous. Although the land is not contiguous in every spot, there is no requirement that it be completely contiguous.

Second, the appellants claim the proposed area is inaccessible because the area cannot be reached by car without having to drive through part of the county. Clinton and Randy Feierabend, agent for the property owners and a member of the North Little Rock Planning Department, testified they could not drive from their offices in the city to the annexed area without having to go through the county. Flickinger stated the police and fire services would have to go through the county to reach the proposed area for annexation. However, the area is accessible. Clinton testified there are several major streets and highways through the area.

Third, appellants complain the proposed area does not represent the normal growth of the city because it zigzags around the landowners opposed to the annexation and it skips over a populated area lying between the proposed area and the city in order to pick up a less populated area. Appellants further claim the only reason the southern part of the area is proposed for annexation is to satisfy the contiguity requirement.

There is substantial evidence to the contrary. Clinton testified that he was familiar with the growth patterns of the city and there is not much room to expand to the north. The city has room to go east, but the flight patterns of the airport deter that growth. Feierabend testified that the area is one of the fastest growing areas in the county. Richard McGehee, Senior Planner with Metroplan, testified to the population projections for the

area. In 1980, the area had a population of 3,297. The projection for the area for the year 2010 is 24,000. The area included in this projection is Maumelle and all the area to the Pulaski County line.

Appellants' final argument on appeal is that the statutory election procedure must be used in order to annex lands. In light of this court's decision in *Gregg* v. *Hartwick*, 292 Ark. 528, 731 S.W.2d 766 (1987), the appellants withdrew this point in their reply brief.

The trial court's order of annexation is affirmed.

HICKMAN and PURTLE, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. I have realized for sometime that cities in Arkansas are pretty well able to annex anything within a hundred miles of the corporate limits, provided they follow the general course of the law. However, until this time I did not realize we were going to release them from the obligation to comply with the general format of the annexation laws.

The mischief in this case is allowing the petitioners to file an amended annexation petition incorporating the signatures of a previous petition that had a defective description of the area sought to be annexed. I will briefly describe what happened.

The petitioner's original petition for annexation contained a defective description. One call was to a point "on the south line of the north half of section 11, Township 2 north, Range 13 west." This call is indefinite because the south line of the north half of section 11 is one mile long. In *City of North Little Rock* v. *Garner*, 256 Ark. 1025, 511 S.W.2d 656 (1974), the legal description commenced at a point on the northeast city limits and ended at a point on the bank of the Arkansas river where the southeast boundary of the city intersected the river. The opinion by this court stated: "This description does not accurately describe the lands to be annexed since it only describes a line that does not connect to the starting point." In invalidating the annexation, the court relied on *Parrish* v. *City of Russellville*, 253 Ark. 1000, 490 S.W.2d 126 (1973), which voided another annexation because the legal description did not close.

The petitioners realized the defect in the petition and

circulated a second one with an accurate geographical description. The problem is that out of the 115 property owners in the area to be annexed, only 57 signed the old petition and only 34 signed the new petition. Twelve of those signing the amended petition also signed the defective petition. Neither petition can stand alone because each contains less than half of the property owners' signatures in the annexed area. The grave error of the majority opinion is that it allows the second group of petitioners to incorporate the signatures of those who signed the first (defective) petition. It would seem that the balance of the original 57 petitioners either changed their minds about annexation or were not given an opportunity to sign a valid petition. By any standard the counting of duplicate signatures should not be allowed.

The precedent of allowing signatures on a defective petition to be used in calculating the total signatures on a subsequent petition is a step in the wrong direction. Signatures on petitions for formation of improvement districts may now be used as signatures on annexation petitions and signatures commending public officials may be used to impeach them.

The majority relies on *Cantrell* v. *Vaughn*, 228 Ark. 202, 306 S.W.2d 863 (1957) as authority for allowing the amendment. That is not the holding of the case. The amendment to the petition for annexation was allowed in county court and was simply a reduction in size of the area sought to be annexed. That case in no shape, form, or fashion even hinted at allowing the petitioners to amend by including names from another petition.

Even cities should be required to follow the format of the law.

HICKMAN, J., joins this dissent.