Edward GAY, Jr., et al. *v.* The CITY OF SPRINGDALE,
Arkansas and Washington Board of Election Commissioners

88-271                                      769 S.W.2d 740*

Supreme Court of Arkansas
Opinion delivered May 8, 1989

---

*REPORTER'S NOTE: Justice Purtle's dissenting opinion can be found at 774
S.W.2d 828.

*Evans & Evans*, by: *James E. Evans, Jr.*, for appellant.

*Jeff C. Harper*, City Att'y and *Michele A. Harrington*, Deputy City Att'y, for appellee.

JACK HOLT, JR., Chief Justice. Appellants Edward Gay, et al., challenge the annexation of four tracts of land by the City of Springdale, Arkansas. We hold that the land was properly annexed and affirm.

In 1983, the City of Springdale annexed approximately 7,000 acres of contiguous land pursuant to Ark. Stat. Ann. §§ 19-301—19-339 (Repl. 1980), currently Ark. Code Ann. §§ 14-40-201—14-40-607 (1987). The Washington County Circuit Court upheld the annexation. This court reversed the decision of the trial court, holding that the proof was insufficient that the annexed land met any one of the five criteria required for

annexation by Ark. Code. Ann. § 14-40-302(a) (1987). *See Gay v. City of Springdale*, 287 Ark. 55, 696 S.W.2d 723 (1985).

On September 22, 1987, the Springdale City Council adopted an ordinance pursuant to Ark. Code Ann. § 14-40-301 (1987) by which it set a special election to determine whether four tracts of land contiguous to the City, totalling approximately 7,300 acres, should be annexed. This land, which is the subject matter of the present appeal, is in the same general area as the land involved in the 1983 proposed annexation. At a special election, the voters approved the annexation. Thereafter, appellants, owners of land in the four tracts that were annexed, filed a complaint in circuit court challenging the annexation. At trial, the following facts were established concerning the annexed tracts:

> Tract one: Tract one consists of fruit orchards, poultry houses, vineyards, grassland, commercial enterprises, residential subdivisions, and an industrial subdivision. Aero-Tech Corporation has bought land in tract one where it plans to build a 50,000 square foot building.
>
> Tract two: Tract two consists of farm land and two residential subdivisions.
>
> Tract three: Tract three consists of twenty-nine poultry houses, thirty-two homes, two residential subdivisions, and large areas of bare land.
>
> Tract four: Tract four consists of bare land, a hog farm, a chicken operation, pasture land, a seventy-acre industrial park currently being developed, and 300 acres of roughly wooded land with ravines and gullies. There are no subdivisions in tract four. However, there is property that has recently been purchased for a subdivision.

After hearing testimony from sixteen witnesses and reviewing numerous exhibits, the trial court found that all four tracts met at least two of the criteria contained in Ark. Code Ann. § 14-40-302(a)(2)—(a)(5) (1987). The court also found that the tracts met the requirement of Ark. Code Ann. § 14-40-302(b)(1)(A) (1987), that the lands have a highest and best use and fair market value for other than agricultural or horticultural purposes. As a result, the circuit court denied the petition, holding

that the appellants failed to meet their burden of proof for exclusion of their lands from the annexation. From this order, appellants appeal.

Appellants contend that the trial court erred by failing to deny the petition for annexation when a substantial portion of the lands to be annexed failed to meet any of the five criteria set forth in Ark. Code Ann. § 14-40-302(a). We disagree.

■ Our law concerning annexation is well established. A majority of electors voting in favor of annexation makes a *prima facie* case for annexation, and the burden rests on those objecting to produce sufficient evidence to defeat the *prima facie* case. *Gay, supra. Holmes* v. *City of Little Rock*, 285 Ark. 296, 686 S.W.2d 425 (1985); *City of Crossett* v. *Anthony*, 250 Ark. 660, 466 S.W.2d 481 (1971). Appellants have the burden of showing the area in question should not be annexed. *Chastain* v. *Davis*, 294 Ark. 134, 741 S.W.2d 632 (1987). By the very nature of this type of litigation, there is a wide latitude for divergence of opinion and, consequently, a high degree of reliance must be placed upon the findings of the trial judge. *Lewis* v. *City of Bryant*, 291 Ark. 566, 726 S.W.2d 672 (1987).

■ We do not reverse the trial court's findings unless they are clearly erroneous. *Id.* In viewing such findings, we consider all evidence in a light most favorable to the appellee. *Jernigan* v. *Cash*, 298 Ark. 347, 767 S.W.2d 517 (1989).

Section 14-40-302(a) provides that a city may annex lands contiguous to the city if the lands are either:

(1) Platted and held for sale or use as municipal lots;

(2) Whether platted or not, if the lands are held to be sold as suburban property;

(3) When the lands furnish the abode for a densely settled community or represent the actual growth of the municipality beyond its legal boundary;

(4) When the lands are needed for any proper municipal purposes such as for the extension of needed police regulation; or

(5) When they are valuable by reason of their adaptability

for prospective municipal uses.

■■  The five criteria listed in this provision are disjunctive, and the annexation may be proper when any one of the five conditions is met. *Gay, supra; Lee* v. *City of Pine Bluff*, 289 Ark. 204, 710 S.W.2d 205 (1986); *Faucett* v. *Atkins*, 248 Ark. 633, 453 S.W.2d 64 (1970). If one of the several tracts is found to be improperly included, the entire annexation must fail. *Gay, supra; Herrod* v. *City of North Little Rock*, 260 Ark. 890, 545 S.W.2d 620 (1977).

■  The fact that land is agricultural and the owner does not want it developed does not determine its fate as to annexation. *Lee, supra; Planque* v. *City of Eureka Springs*, 243 Ark. 361, 419 S.W.2d 788 (1967). Annexation is not prohibited solely because a tract is rather rugged or heavily wooded with sparse population. *Chappell* v. *City of Russellville*, 288 Ark. 261, 704 S.W.2d 166 (1986); *Holmes, supra.* It is proper for a city to annex property if it is needed for the purpose of making improvements and if the value of the land is derived from actual and prospective use for city purposes. *Holmes, supra. Brown* v. *Peach Orchard*, 162 Ark. 175, 257 S.W. 732 (1924).

The trial court found that all four tracts met the fourth criterion of Ark. Code Ann. § 14-40-302(a). To meet this criterion, lands must be needed for any proper municipal purposes such as for the extension of needed police regulation. Several witnesses testified in this regard. Tom Reed, an expert witness for defendant-appellees, testified that all four tracts are needed for proper municipal purposes and that the City had a 16% increase in residential building permits between 1985 and 1986 and a 29% increase between 1986 and 1987. Bob Harlan, an employee of the Northwest Arkansas Planning Commission and a planner for Springdale, testified that Springdale is expected to grow 20% in the next seven years; that the City has proper municipal purpose for controlling orderly growth in all four tracts; and that annexation would serve that purpose.

Andre Houser, the City's administrative assistant to the Mayor, testified that the lands in tracts one and two, which contain "enterprise zones," are needed by the City for the proper municipal purpose of providing new and expanded employment opportunities. An "enterprise zone" provides businesses and

industries located therein certain state income tax exemptions for employees as well as certain sales and use tax refunds for material and machinery used in expansion or construction. Before an enterprise zone may be "activated," it must be inside the city limits.

Daniel White, the Springdale Fire Chief, testified that if the tracts are annexed, the fire department can provide fire service to the annexed areas. In addition, he asserted that the department has had trouble responding to calls because it is often difficult to tell whether a caller is in the City or in tract four. Trumann Brewer, the Springdale Chief of Police, testified that if the tracts are annexed, the department can provide police service to annexed area. He also stated that it will be easier to provide service if the area is annexed since the police will know whether or not callers are in the City.

Rene Langston, Executive Director of the Springdale Water and Sewer Department, testified that the City needs to annex the area for sewer and water planning purposes. Roy Bowman, a Springdale City Councilman, stated that there is growth in all four tracts and that Springdale needs the annexation for orderly growth and development and police and fire protection. Harold Vowell, a local developer, testified that there is a shortage of lots in Springdale and that no land suitable for a subdivision is available in the City limits.

In light of this extensive testimony that the lands are needed for proper municipal purposes, we conclude that the trial court's finding that all four tracts met the fourth criterion is not clearly erroneous. Since the tracts must meet one of the criteria of Ark. Code Ann. § 14-40-302(a) for annexation to be proper, we find it unnecessary to address the trial court's findings regarding the other criteria.

Appellants also contend that the trial court's finding that they failed to prove their lands to have a fair market value at the time of the adoption of the ordinance of lands used only for agricultural or horticultural purposes and the highest and best use of the land is for such purposes is contrary to the law when applied to the facts and testimony in evidence. We disagree.

Section 14-40-302(b)(1)(A) provides that contiguous lands

shall not be annexed if they:

> Have a fair market value at the time of the adoption of the ordinance of lands used only for agricultural or horticultural purposes and the highest and best use of the lands is for agricultural or horticultural purposes.

Appellants' point of contention is that the defendant-appellees' expert witness, Tom Reed, was "forecasting" land use and values when he claimed that the highest and best use and fair market value of the annexed land at the time of the adoption of the ordinance was for other than agricultural or horticultural purposes. Reed's overall testimony reflects otherwise.

Tom Reed testified that after examining sales in the annexed areas in the last two years, he found that (1) there have been numerous residential and commercial sales in all four tracts; that (2) an investor cannot buy land in the tracts for agricultural or horticultural use and get a positive return; that (3) many investors are speculating by buying land for investment purposes and putting chickens on the land for interim use; that (4) the prices paid, as indicated by the prices in the real estate market, do not indicate the land in the four tracts to have a fair market value for agricultural or horticultural purposes or the highest and best use for such purposes; that (5) the highest and best use for some of the landowners is agricultural; that (6) the highest and best use is a market concept, not an individual concept; that (7) highest and best use is a long-term concept, not a present concept; that (8) he is forecasting; that (9) he is not talking about the future, but the highest and best use at the time the ordinance was passed; and that (10) some of the land in the annexation is not ready for immediate development and has an interim agricultural use until the growth, trends, and supply and demand cause it to change.

◼ Although Reed during the course of his testimony characterized his opinion as "forecasting," he specifically stated that he was not talking about highest and best use in the future but at the time the ordinance was passed. The trial court, faced with this apparent inconsistency, had no trouble concluding that his testimony and the evidence established that the highest and best use and the fair market value of the land in all four tracts was for other than agricultural or horticultural purposes. Under the

circumstances, we defer to the judgment of the trial court. We cannot say that the trial court's finding is clearly erroneous.

Finally, appellants contend that Ark. Code Ann. § 14-40-302 violates the due process clause of the United States and Arkansas Constitutions in that it (1) permits the "taking" of property without just compensation and (2) impermissibly dilutes the voting rights of residents in the area to be annexed since an annexation can be approved even if a majority of the voters in the area oppose annexation.

■ Since appellants neither cite authority nor make convincing argument in support of this point of error, we do not consider it. It is well established that we do not consider arguments on appeal that are unsupported by convincing argument or authority, unless it is apparent without further research they are well taken. *McGuire* v. *Bell*, 297 Ark. 282, 761 S.W.2d 904 (1988).

Affirmed.

HICKMAN and PURTLE, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. It seems that if it were left entirely to the cities, there would be no land in Arkansas outside municipal boundaries. This court is apparently of the same opinion, except that it would require a formal vote, primarily of city residents, before farms, ranches, orchards, and other agricultural or horticultural lands may be annexed. Neither the cities nor this court seem to consider the actual and natural uses of these lands. Nor do they consider the wishes of the landowners or the people in the community. I submit that this annexation (to say nothing of most others) results from municipal desires to receive more revenue. Usually, no services are promised for a period of three years, and frequently they take even longer to materialize. The result is that the existing cities receive immediate monetary benefits from the annexed areas while giving very little, if anything, in return. (Sometimes the services never reach pre-annexation standards.)

There is a pattern discernable in every annexation attempt that is presented to this court. The police chief and the fire chief, who function as agents of a city's governing body, always testify that they need the proposed area of annexation in order to protect

it. It would be highly unusual for an official of any city to object to what his employer is proposing. In this case the testimony of the police and the fire chiefs was that if the land were annexed, they would be able to give better service because they would then know that it is within the city limits. It is a mystery to me how they will be able to know that this land is within the municipal boundaries after annexation when they evidently do not know where the city limits are at the present time.

There has been no showing that the annexed land is needed for municipal purposes. These are the exact same lands that were annexed in 1983, with a few hundred acres added. The 1983 annexation was voided because the overwhelming bulk of the land was held for investment or agricultural purposes. The opinion stated:

> First, the proof was clear that most of the land was neither platted nor held for sale as municipal lots. Second, the proof was overwhelming that the bulk of the land is held for investment purposes, agricultural purposes, or to be sold as two-to-five acre "farmettes." Therefore, it was not held to be sold as suburban property. Third, there are only 700 homes and 2,500 people in the entire 7,000 acres. Obviously, the tracts represent neither a densely settled area nor the actual growth of the city beyond its boundary. In fact, the appellees' testimony was entirely in terms of the future growth of the city beyond its boundary. Fourth and fifth, a number of witnesses testified by stipulation that "[t]he lands are not needed for municipal purposes and are not adaptable for municipal purposes." These actual stipulations are not contradicted by opposing testimony. In view of the evidence, the proof is clear that the lands did not meet any one of the criteria set forth in the first paragraph of the annexation statute. Therefore, the lands are not eligible for annexation.

*Gay* v. *City of Springdale*, 287 Ark. 55, 696 S.W.2d 723 (1985).

After defeat, by the court, of the last attempted annexation of this land, the City of Springdale devised a scheme to get this court to approve the annexation. It worked. The plan was to break the land up into tracts and put a small portion of each tract in a use for something other than agricultural or horticultural purposes.

All of the houses, barns, subdivisions, enterprise zones, and industrial areas could be placed together on one of these tracts and still have hundreds of acres left. There is absolutely no dispute by any witness that the vast majority of the lands in all four tracts is neither platted or held for city use or development nor designated for anything other than agricultural or horticultural purposes. Under this theory of annexation, a city could locate a plot of ground with a few houses on it and use it as a basis for annexing 10,000 acres of wild, unenclosed agricultural and horticultural lands. This, in my opinion, was never the intent of the legislature. Annexation is now limited only by the projections of city planners and sophisticated developers. It should, however, be limited by laws enacted by the General Assembly since that body is the giver of life to all cities.

I realize that I may as well be hissing in the wind for all the effect this dissent will have on this court and the cities. However, I must express my opinion on annexation, perhaps for the last time. In the present case, both the burden of the election and the proof of the suitability for annexation is on the non-resident citizens. Annexation laws in this state are about as fair as allowing Texas to vote on annexing Arkansas with the results to be determined by a vote of the combined population of the two states.

The city's witnesses as well as the appellants' witnesses all agreed that much of the annexed property is held in agricultural status and that there are thousands of acres with no roads, no water and sewer, no improvements, no plattings and nothing to indicate that the property is held for development purposes. Most of the remainder of the land consists of orchards, chicken ranches, and hog farms. No city ever furnishes water and sewer services. These are paid for entirely by taxpayers and property owners through the establishment of improvement districts.

The city's own expert, Tom Reed, testified that most of the land in each of the four tracts has not been platted and is not held for municipal purposes. He further admitted that none of the tracts were totally adaptable for city purposes. I have never yet seen an expert who did not have, where developments are concerned, an imagination that exceeded the bounds of reason. The vast majority of annexed land is used for agricultural and horticultural purposes. At the time of the adoption of the

annexation ordinance, the highest and best use of the lands was for agricultural and horticultural purposes. That is an undisputed fact revealed by the record.

The city's chief spokesman at trial testified that the city needed all of these tracts of lands for orderly growth and development in the future. That is pure speculation and, at the very least, future planning. The existing law prohibits annexation of lands which, at the time of the adoption of the annexation ordinance, are used for agricultural or horticultural purposes when the highest and best use of such lands is for those purposes. There is no testimony to dispute that much of the land in each of the four parcels is unsuitable for annexation.

The city, as expected, attempted to show by testimony of sophisticated developers that the land was used for agricultural and horticultural purposes only on an interim basis. The same observation could have been made of most of the United States at the time the first cities were developed. Mr. Reed, the city's expert in land use, stated that the property of Smith, Hash, McGuire, and Cargill had a current highest and best use as agricultural lands. This was the same testimony that he had given in 1983. Neither the law nor the land has changed since that time.

According to the record, the only difference in the situation now and in 1983 is that there are 1,000 houses and 2,700 people in the proposed annexed area, whereas in 1983, there were 700 houses and 2,500 people. The difference appears to be that the city added an area which includes a number of residences or a subdivision. The true motive of the city was revealed when its witnesses admitted that it would immediately start gaining $465,780.00 annually in new revenue upon annexation. It will, of course, receive several million dollars in revenue before it ever spends a dime or offers any real services to the area.

Finally, I agree with the appellants that the annexation laws violate the state and federal constitutions by denying due process and equal application of the laws to the people in the area annexed. The surrounding landowners and taxpayers are going to be giving the city at least $465,000.00 for three years before the city even proposes to offer any services to them. It appears to me that this matter is clearly subject to article 2, section 2, of the Constitution of the State of Arkansas, which prevents the

government from taking property without just compensation. It is also clearly a violation of the United States Constitution's prohibition against the taking of private property without just compensation. If a city were required to give the same services to an annexed area that it does to existing parts of the municipality, then I am sure annexation would slow to a snail's pace. Each annexation of large areas causes residents of the central part of a city to move out into the suburban areas, thus leaving an undesirable, unprotected central city to those who would plunder and establish a habitat for crime. If cities were to develop good and workable programs that prove beneficial to their inhabitants, residents of outlying areas would strive for annexation. Annexation can be accomplished by a petition of the adjoining landowners if it is their desire to become a part of the city.