TOWN OF HOUSTON, Arkansas;
and Carl G. Hillis, Agent for Petitioners *v.*
Anna CARDEN et al.

97-715                                   965 S.W.2d 131

Supreme Court of Arkansas
Opinion delivered March 19, 1998

*James F. Goodhart, P.A.*, for appellants.

*McMillan, Turner, McCorkle & Curry*, by: *Ed McCorkle*, for appellees.

ROBERT L. BROWN, Justice. On June 23, 1995, appellant Carl G. Hillis and numerous other landowners petitioned the Perry County Court that 900 acres of land lying west of the Town of Houston be annexed into the town pursuant to Ark. Code Ann. § 14-40-601 (1987). The Perry County Court found that the petition was "right and proper" under Ark. Code Ann. § 14-40-603(a) (1987), and ordered the annexation.

Appellees Anna Carden and other landowners, who live within the annexed area (Carden) filed an action in circuit court against the Town of Houston (Town) and Hillis to prevent the annexation. Carden had received a permit to operate a hog farm in the annexed area, and under a Houston ordinance, she could not do so. At the ensuing trial, witnesses testified and evidence

was received, following which the trial court entered an order annulling the annexation. The court specifically found that none of the five factors announced in *Vestal v. Little Rock*, 54 Ark. 321, 15 S.W. 891 (1891) had been satisfied.

At trial, Carden presented evidence on why the annexation should be annulled and called Jerry Lawson, Mayor of Houston. The mayor testified that the Town was one square mile, or 640 acres, in size and that the population was approximately 175 persons. He testified that the Town did not have a water treatment plant or sewer system and that it received its water by pipeline from the nearby town of Perryville. He admitted that while some of the residents who lived on the periphery of the proposed annexation received water from Houston, others used well water, and that Perryville had restricted the Town's ability to add new customers. Mayor Lawson also testified that Houston had a volunteer fire department that included members who lived outside of the Town and that service was provided to out-of-town residents. He stated that the Town lacked a street department and equipment but that the Town had reached an agreement with the county judge for the maintenance of portions of a county road located within the proposed annexation.

Mayor Lawson admitted that Houston lacked a planning commission, other than the Town council, and that it did not provide for garbage pickup. He admitted that the population of the Town had decreased in the last twenty or thirty years and that the Town only had three businesses: a general store, an automobile-repair station, and a realty company. He testified that only three to five buildings had been built in the Town the last five years and that no building permits were in existence for the proposed annexation. Although he testified that he heard that persons had land for sale in the proposed annexation, he stated that he knew of no person who was platting land into blocks and lots.

Mayor Lawson described Ordinance No. 95-1, which was passed on December 14, 1995. He testified that that Ordinance was the only ordinance in effect in the Town and that it prevented commercial livestock operations from conducting business within the Town limits. In connection with the ordinance, he admitted

that he "heard a lot of talk" about Carden, who lived within the proposed annexation and who had received permission from the Arkansas Department of Pollution Control and Ecology (Department) to operate a hog farm. He maintained that Carden's activities were not the reason for the ordinance, but he admitted that he wrote to the Department and requested that it revoke her permit. The request was denied.

Mayor Lawson also told the circuit court that the Town had been considering annexation for at least four years in order to receive population-based matching-fund money and to improve its fire department by locating a pumper fire truck and fire house within the proposed annexation. He also believed that the proposed annexation would lead to better security, possibly in the form of a marshall; better lighting; better roads; and city water due to the possibility that the Town would expend money to provide these services.

He further explained that Ordinance No. 95-1 was an exercise of the Town's police power to prevent nuisances from occurring within the Town's limits. He agreed that the ordinance was passed, in part, due to noxious odors from a separate hog farm located to the east of town. In apparent contradiction of his testimony on direct examination, he explained that the population of Houston had grown in the last five to ten years with the construction of several new homes. He explained that if the Town had increased revenues, it would be more likely to spend money to provide water service to the annexed land.

Carden next testified that she owned 91 acres of land located within the proposed annexation that she used for raising cattle. She stated that she received her hog-farm permit on December 30, 1995. She related that although a hearing was held on her permit before the Department where appellant Carl Hillis and others testified in opposition, no appeal was sought by them after she was awarded the permit. In her opinion, the purpose of the annexation was to stop the operation of her proposed hog farm.

Carden then described the area to be annexed. She testified that the vast majority of the 900 acres was pasture and timber, with homes located on several parcels of land, and a greenhouse

and a "New Beginnings" ministry on others. She testified that she was not aware of the operation of any businesses within the proposed annexation and that she did not know of any land for sale or land being platted for subdivisions. Carden also stated that no roads extended throughout the proposed annexation.

Appellee Toby Davis, who owned approximately 45 acres within the proposed annexation, testified that he raised beef cattle on his property. He stated that he had hoped to operate one or two chicken houses, but that now he could not do so as a result of Ordinance No. 95-1. He added that prior to the annexation, Hillis contacted him about supporting the annexation and told him: "[W]e need to pull together to stop hog farms." It was clear from his conversation that Hillis was referring to Carden. He testified that there were no roads crossing through the proposed annexation and that he was not aware of any property being for sale.

The Town and Hillis then put on their case. Hillis, who owned 80.5 acres within the annexation, explained that landowners owning 27 parcels of land within the 900-acre proposed annexation joined him in his petition for the annexation. Hillis reiterated that the reasons behind the annexation were better fire and police protection, water, and street lights. He believed that he and other landowners would eventually develop portions of their land into a subdivision once the area was annexed and "absolutely" agreed that Carden's plans to operate a hog farm played a role in the annexation because he believed it was the only way to address such a nuisance. He stated that he was well aware of the problems caused by hog farms because the noxious odors from the Brook Hog Farm, which was located east of Houston, were generally experienced throughout the community.

Hillis also testified about the use of the land in the proposed annexation. He stated that no people within the area were engaged in row-crop farming because of the quality of the land, which, he opined, was not suited for that farming activity. Much of the land, he said, was pasture, and timber was raised on only one plot. He did admit on cross-examination that he and other landowners used their pastures to raise cows and that numerous

landowners held property that contained standing timber. He testified that most of the land was used for residential purposes and that there was a "New Beginnings" ministry, a church, a greenhouse, and a printing business in the affected area. He also admitted that he and other appellants were members of Citizens United Against the Proliferation of Hog Farms, which was engaged in various lawsuits throughout the state to prevent the establishment of hog farms.

Other proponents of the annexation living in the area testified that the best use of the area was not agricultural and that the hog farm would depreciate the value of their property and cripple their ability to enjoy the outdoors. They further claimed that improved Town services for them was a definite factor in favor of annexation.

The circuit court issued a letter opinion and subsequent order in which he annulled the annexation and found that the area in question did not meet any of the *Vestal* criteria. *See Vestal v. Little Rock, supra.* The circuit court specifically found:

- There was no evidence the town needed the annexed land for any proper town purpose like extension of streets, sewer, gas, or water.
- There was no evidence the town needed the area for business purposes.
- There was no evidence of crime in the town or surrounding areas.
- There was no evidence that the annexed land had a higher or better use for municipal purposes.
- Prevention of a hog farm is not a prong for annexation and stopping foul odors is not a reason for proper annexation of property.

The Town and Hillis contend on appeal that the circuit court erred in its decision for two reasons: (1) the court improperly shifted the burden of proof to the proponents of the annexation, and (2) the court's findings were not supported by substantial evidence. We first consider the issue of the burden of proof.

The burden of proof in an action to prevent annexation is placed on the remonstrants to prove that the area should not be

annexed. *Gay v. City of Springdale,* 298 Ark. 554, 769 S.W.2d 740 (1989) *(Gay II); Chastain v. Davis, supra; City of Crossett v. Anthony,* 250 Ark. 660, 466 S.W.2d 481 (1971). *See generally* Morton Gitelman, *Changing Boundaries of Municipal Corporations in Arkansas,* 20 Ark. L. Rev. 135 (1966). For their argument that the circuit court improperly placed the burden of proof on them, the Town and Hillis point initially to the circuit court's statements in its order: (1) there was "no testimony" the proposed property was needed for street purposes; (2) there was "no evidence" that Houston needed the annexed property for any town purpose, such as for streets or a sewer, gas, or water system; (3) there was no evidence that the town's people needed the space for business purposes; (4) there was no proof Houston needed to extend its police regulations because there was "no evidence" of any crime, inside or outside the city; and (5) there was "no evidence" that the agricultural land within the proposed annexation had a "higher or better use for municipal purposes."

In response, Carden contends that the circuit court merely performed its task under Ark. Code Ann. § 14-40-604(a)(2)(A), which provides in part that if the court is satisfied the requirements for annexation have not been complied with, the court "shall" make an order restraining any further action pertaining to the annexation order of the county court and annulling it. According to Carden, the circuit court was merely summarizing the evidence submitted on whether the annexation satisfied the requirements of *Vestal v. Little Rock, supra.*

■ The appellants' argument is without merit. Carden clearly had the burden of proof, and she put on her case first relating to the effect of the annexation on Houston, the highest and best use of the annexed area, and the scheme to stop her hog farm. One of her witnesses was the mayor of the Town, Jerry Lawson, who addressed the issue of whether the land was needed for any municipal purpose. The circuit court's letter opinion and order addressed this proof and found in Carden's favor. Regardless of how the court couched its findings, we are convinced that the burden of proof was not impermissibly shifted to the Town and Hillis.

■ We turn next to the merits of the case. The five *Vestal* criteria used to justify annexation by adjoining landowners which were alluded to by the circuit court are as follows:

(1) Whether the property is platted and held for sale or use as municipal lots;

(2) Whether platted or not, if the lands are held to be sold as suburban property;

(3) Whether the lands furnish the abode for a densely settled community or represent the actual growth of the municipality beyond its legal boundary;

(4) Whether the lands are needed for any proper municipal purposes such as for the extension of needed police regulation; and

(5) Whether the lands are valuable by reason of their adaptability for prospective municipal uses.

*See also* Ark. Code Ann. § 14-40-603(a) (1987) (requiring that the prayer of the petitioner for annexation be "right and proper").

■ We have stated that these five criteria should be considered in the disjunctive, and an annexation is proper if any one of the five factors is met. *Gay II, supra; Lee v. City of Pine Bluff,* 289 Ark. 204, 710 S.W.2d 205 (1986); *Gay v. City of Springdale,* 287 Ark. 55, 696 S.W.2d 723 (1985), *reh'g denied,* 287 Ark. 58-A, 698 S.W.2d 300 (1985)(*Gay I*). The criteria apply regardless of whether the annexation proceeding was initiated by the city or by adjoining landowners. *Chastain v. Davis,* 294 Ark. 134, 741 S.W.2d 632 (1987); *Louallen v. Miller,* 229 Ark. 679, 317 S.W.2d 710 (1958); *Cantrell v. Vaughn,* 228 Ark. 202, 306 S.W.2d 863 (1957). If a part of the proposed area does not meet one of the five requirements, the annexation of the entire area is void *in toto. Gay II, supra; Chastain v. Davis, supra; Chappell v. City of Russellville,* 288 Ark. 261, 704 S.W.2d 166 (1986). Furthermore, agricultural and horticultural lands are not to be annexed when their highest and best use is for agricultural or horticultural purposes. *Chappell v. City of Russellville, supra; Louallen v. Miller, supra.*

■ ■ An action to prevent annexation such as that brought by Carden is not an appeal of the county court's order. Rather, it is an independent attack on the annexation authorized under Ark. Code Ann. § 14-40-604 (1987). *Re: Proposed Annexa-*

*tion to Town of Beaver v. Ratliff,* 282 Ark. 516, 669 S.W.2d 467 (1984); *Britton v. City of Conway,* 38 Ark. App. 232, 821 S.W.2d 65 (1991). In annexation cases, this court places a high degree of reliance upon the findings of the trial judge and does not reverse unless they are clearly erroneous. *Gay II, supra; Lewis v. City of Bryant,* 291 Ark. 566, 726 S.W.2d 672 (1987). Furthermore, this court views the evidence in the light most favorable to the appellee. *Id.*

The circuit court was correct in being skeptical about the propriety of this annexation. There is very little, if any, credible testimony to the effect that the Town itself would be benefited by annexing this property. For example, Mayor Lawson testified that the Town would be improved because it would receive additional matching-fund money due to the population increase of approximately 110 people, but he focused primarily on the benefits to the area to be annexed in terms of better security, roads, and fire protection rather than the benefit to the Town. While Hillis testified that the additional land would allow the Town to employ a marshall and expand, there was no credible proof that the Town required additional space for businesses or residences or that security was a problem. Thus, while the prospective benefits to Hillis and the other proponents living in the area to be annexed seem fairly clear, we do not believe the circuit court clearly erred in finding that the contemplated benefits to the Town were indeed slim or even nonexisting.

It is, of course, undisputed that predominantly agricultural land may be annexed if it can be made to serve a municipal purpose *and* its highest and best use is not agricultural. But we, again, question whether there is a viable municipal purpose for the land under the *Vestal* criteria. Moreover, the cases cited by the Town and Hillis are distinguishable. For example, in *Chappell v. City of Russellville, supra,* we affirmed the circuit court's order upholding the annexation of 4,150 acres of land, some of which was woodland, swampland, and farmland. In doing so, we focused on the fact that the mere presence of farmland, when its highest and best use is not for agricultural purposes, will not prevent annexation and that swampland and wooded areas may also pass muster for annexation when the value of the land is derived from its actual

and prospective use for city purposes. *Chappell v. City of Russell-ville,* 288 Ark. at 262-63, 704 S.W.2d at 167, *citing Holmes v. City of Little Rock,* 285 Ark. 296, 686 S.W.2d 425 (1985).

In *Chappell,* the circuit court also found specifically that (1) much of the lands to be annexed represented the actual growth of the city beyond its legal boundary; (2) the lands were needed for extension of police and fire protection for city residents; (3) the lands were valuable by reason of their adaptability for prospective municipal purposes; and (4) that the highest and best use of the land was for purposes other than agriculture.

In sum, the *Chappell* case is wholly different from the case at bar, where it is difficult to ascertain any benefit to the Town to be gained by annexing the 900 acres under the *Vestal* criteria. *See also Lee v. City of Pine Bluff,* 289 Ark. at 209, 710 S.W.2d at 208 (affirming annexation of a flood plain as part of an "honest effort" to encompass the growth of the city, but cautioning: "That does not mean we will recognize annexation proposals that are essentially land grabs[.]"); *Gay I* (involving a "land grab" by the city). Stated simply, Carden successfully proved that Houston, a town of 640 acres and approximately 175 persons, has no real need for an additional 900 acres and 110 persons. Certainly, Houston does not need to annex 900 acres for the purpose of placing a fire station in that area. Crime is not a factor. And increased revenue from matching funds due to 110 new citizens which can be used for street lights in Houston seems very tenuous.

There is the remaining issue of Houston's exercise of its police power to stop the hog farm. Testimony at trial clearly established that the prevention of commercial hog farms from operating in the area was a primary reason for the annexation. In the past, this court has indicated that health considerations are proper. *See, e.g., City of Little Rock v. Findley,* 224 Ark. 305, 272 S.W.2d 823 (1954) (affirming trial court's order nullifying annexation under substantial-evidence test but acknowledging that arguments relative to curing health and sanitation problems were "persuasive"); *Walker v. City of Pine Bluff,* 214 Ark. 127, 214 S.W.2d 510 (1948) (affirming circuit court's annexation order under substantial-evidence test and including evidence that the

proposed area was a "health menace"). The question for us to decide is whether the Town's police power is broad enough to thwart the foul odors emanating from a hog farm which is at issue in this case. *See, e.g., Springfield v. City of Little Rock*, 226 Ark. 462, 290 S.W.2d 620 (1956) (involving the city's authority to raze sixteen housing units that were unsanitary and dangerous to public health due to disrepair); *Gus Blass D. G. Co. v. Reinman*, 102 Ark. 287, 143 S.W. 1087 (1912) (involving the city's authority to abate the operation of a livery stable).

■ Regardless of the interest of the Town in preventing foul odors, we hold that the circuit court correctly concluded that that purpose alone cannot be the sole reason for upholding the annexation of 900 acres. As has already been emphasized, if a part of the annexation does not meet one of the *Vestal* requirements, then annexation of the entire area is void *in toto*. *See Gay II, supra; Chastain v. Davis, supra; Chappell v. City of Russellville, supra.* Carden's land, on which the purported hog-farm nuisance is to be located, comprises only 91 of the 900 acres. Therefore, the remaining 809 or so acres are not necessary for annexation under the exercise of a police power, even assuming that preventing noxious odors was a legitimate health reason for the annexation.

■ We affirm on the twin bases that the circuit court did not shift the burden of proof in this case and the findings of the court are not clearly erroneous. This being the case, the circuit court's decision is supported by substantial evidence. *See Chastain v. Davis, supra.*

Affirmed.