## CITY of MARION; Meredith Hardin *v.* GUARANTY LOAN & REAL ESTATE COMPANY, *et al.*

CA 00-1459 58 S.W.3d 410

Court of Appeals of Arkansas
Division III
Opinion delivered November 7, 2001

*James C. Hale, III*, for appellants.

*Rieves, Rubens & Mayton*, by: *J. Michael Stephenson*; and *David C. Peeples*, for appellees.

KAREN R. BAKER, Judge. Appellants, City of Marion and Meredith Hardin, appeal a decision by the Crittenden County Circuit Court affirming the county judge's decision that granted a petition for annexation of certain property to the City of West Memphis. Appellants present four points on appeal. First, appellants argue that the trial court erred in ruling that the appellants were not prejudiced by the appellees' filing of an amended annexation petition and maps on the day of trial. Second, appellants argue the trial court erred in ruling that the annexation petition contained the majority of the landowners' signatures as required by Arkansas Code Annotated section 14-40-601 *et seq.* (Repl. 1998). Third, appellants argue that the court erred in ruling that an accurate map was made and filed describing the limits of the territory to be annexed. Fourth, appellants argue that the circuit court erred in ruling that the appellees' petition for annexation was right and proper. We affirm.

On November 4, 1996, appellee, Guaranty Loan & Real Estate Company, filed a petition and a map to annex approximately 835.3 acres to the City of West Memphis. The property belonged to six land owners: Guaranty Loan & Real Estate, owning 755.4 acres; the State of Arkansas, owning eighteen and one-half acres; Sherman Bretherick, owning fifteen and one-half acres; the City of West Memphis, owning five acres; Arkansas Builders Transport, Inc., owning twenty acres; and the Bronson Family Trust, owning twenty and nine-tenths acres. Notice was published in the *Evening Times*, a newspaper of general circulation once a week for three consecutive weeks.

On November 21, 1996, Meredith Hardin, Trustee for the Bronson Trust, along with several other landowners, filed a petition for annexation of twenty and nine-tenths acres of property to the City of Marion. This portion of property was included in the 835.3 acres of the November 4, 1996, petition. On December 12, 1996, Meredith Hardin filed an objection on behalf of the Bronson Trust to the pending November 4, 1996, annexation petition. An amended petition for annexation was filed on December 12, 1996,

containing the names of additional property owners, Sherman Bretherick, Builders Transport, Inc., and the Mayor of the City of West Memphis. A second map was also filed. At a hearing on December 12, 1996, a third map describing the area to be annexed was filed.

On December 16, 1996, the county judge granted the petition for annexation to the City of West Memphis. The City of Marion and the Bronson Trust appealed the county judge's decision to the Crittenden County Circuit Court. On August 25, 2000, the circuit court entered an order affirming the county judge's decision. From that order, comes this appeal.

A high degree of reliance must be placed upon the findings of the trial judge because, by the very nature of this type of litigation, there is wide latitude for divergence of opinion. *Lewis v. City Of Bryant*, 291 Ark. 566, 726 S.W.2d 672 (1987). Thus, our task is not to decide where the preponderance of the evidence lies, but solely and simply to ascertain whether the trial court's findings of fact are clearly erroneous. *Id.* (citing *Holmes v. City of Little Rock*, 285 Ark. 296, 686 S.W.2d 425 (1985)). When the appellate court has a firm and definite belief that the trial court made a mistake, it will hold the trial court's finding as clearly erroneous even if there is evidence to support it. *City of West Memphis v. City of Marion*, 332 Ark. 421, 965 S.W.2d 776 (1998). This court views the evidence in the light most favorable to the appellee. *Town of Houston v. Carden*, 332 Ark. 340, 965 S.W.2d 131 (1998).

First, appellants argue that the trial court erred in ruling that the appellants were not prejudiced by the appellees' filing an amended annexation petition and maps on the day of trial. Appellants argue that they were prejudiced when they were unable to argue the validity of the additional signatures on the amended petition because they were unaware that there were petitioners other than Guaranty Loan & Real Estate Company. Appellants also argue that they were prejudiced when the burden of proof shifted and appellants were forced to proceed, litigating issues from an amended petition filed on the day of the trial. Appellants' argument is premised on Arkansas Rule of Civil Procedure 15 (2001). Rule 15(a) states:

> With the exception of pleadings the defenses mentioned in Rule 12(h)(1), a party may amend his pleadings at any time without leave of court. Where, however, upon motion of an opposing party, the court determines that prejudice would result or the

disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding.

Where there was no demonstration of any prejudice resulting from an amendment, the amendment should be allowed. *See Turner v. Stewart*, 330 Ark. 134, 952 S.W.2d 156 (1997). Appellee cites *Chastain v. Davis*, 294 Ark. 134, 741 S.W.2d 632 (1987). The court in *Chastain* held that the trial court did not err in allowing an amended petition, although the original petition contained an incorrect property description; the map attached to the petition properly and sufficiently described the property sought to be annexed, and the area proposed for annexation was not changed or increased by the amended petition. Here, although the maps differed in the property descriptions, the property description in the petition remained the same, and the appellants failed to prove that any prejudice resulted from allowing the amended petition which added the signatures of additional landowners.

 Second, appellants argue that the trial court erred in ruling that the annexation petition contained the majority of the landowners' signatures as required by Arkansas Code Annotated sections 14-40-601 *et seq.* (Repl. 1998). The preliminary issue that we must address is whether the signature on the amended petition of the Mayor, as a representative of the City of West Memphis was unauthorized, and whether the trial court erred in ruling that the City of West Memphis, could ratify the Mayor's signature by the adoption of Resolution 1610. Appellants cite Arkansas Code Annotated section 14-43-502(a) and (b)(1) (Repl. 1998), which states:

> The city council shall possess all the legislative powers granted by this subtitle and other corporate powers of the city not prohibited in it or by some ordinance of the city council made in pursuance of the provisions of this subtitle and conferred on some officer of the city. The council shall have the management and control of finances, and of all the real and personal property belonging to the corporation.

Appellees cite section 14-43-504 (Repl. 1998), which states that the mayor of the city shall be its chief executive officer and conservator of its peace. In *Hot Stuff, Inc. v. Kinko's Graphic Corp., Inc.*, 50 Ark. App. 56, 901 S.W.2d 854 (1995), this court stated that the general principle of interpretation of scope of authority is that an agent is authorized to do, and to do only, what is reasonable for him to infer that the principal desires him to do in the light of the

principal's manifestation and the facts as he knows or should know them at the time he acts. Acquiescence by the principal in conduct of an agent whose previously conferred authorization reasonably might include it, indicates that the conduct was authorized. *Id.* "A municipal corporation may ratify the unauthorized acts of its agents, or officers, which are within the scope of the corporate powers, but not otherwise." *Day v. City of Malvern*, 195 Ark. 804, 807, 114 S.W.2d 459, 461 (1938) (quoting *Texarkana v. Friedell*, 82 Ark. 531, 102 S.W. 374 (1907)). Ratification proceeds upon the assumption that there has been no prior authority and constitutes a substitute therefor; it is in the nature of a cure for authorization, and is equivalent to original, prior, or previous authority. *Arnold v. All Amer. Assurance Co.*, 255 Ark. 275, 499 S.W.2d 861 (1973).

▆ In this case, the circuit court concluded that it was not necessary for the city council to authorize the Mayor of the City of West Memphis to sign a petition to annex property; but, in any event, the city council of West Memphis had ratified the Mayor's signature by adopting Resolution 1610. We agree that the Mayor's signature on the petition on behalf of the City of West Memphis was an exercise of his authority as chief executive officer of the city, and that regardless of his prior authorization, the action was ratified by the city council.

▆ ▆ We turn next to appellant's argument that the trial court erred in finding that the annexation petition contained the majority of the landowners' signatures as required by Arkansas Code Annotated section 14-40-601 *et seq.* (Repl. 1998) which states:

> Whenever a majority of the real estate owners of any part of a county contiguous to and adjoining any city or incorporated town shall desire to be annexed to the city or town, they may apply, by petition in writing, to the county court of the county in which the city or town is situated and shall name the persons authorized to act on behalf of the petitioners.

Section 14-40-601(b) defines "majority of the real estate owners" as "a majority of the total number of real estate owners in the area affected, if the majority of the total number of owners shall own more than one-half (1/2) of the acreage affected." Although the statute does not specifically provide for amendment in a petition for annexation, nothing prevents the court's looking to the petition and the amended petition to ascertain whether or not a majority of the

owners of record who own a majority of land have, in fact, petitioned to be annexed. *Chastain v. Davis*, 294 Ark. 134, 741 S.W.2d 632 (1987). Here, the property subject to annexation had six owners. The original petition for annexation contained only one signature, that of the agent for Guaranty Loan & Real Estate Company. The amended petition contained three additional signatures, Sherman Bretherick, Builders Transport, Inc., and Al Boals, Mayor of the City of West Memphis. Between Guaranty Loan & Real Estate Company, Sherman Bretherick, Builders Transport, Inc., and the City of West Memphis, the petitioners owned approximately 795 acres of the 835.3 acres subject to the annexation. Clearly, a majority of the landowners signed the amended petition per the statutory requirements.

■ Third, appellants argue that the court erred in ruling that an accurate map was made and filed describing the limits of the territory to be annexed, violating Arkansas Code Annotated section 14-40-603 (Repl. 1998). That section states that a trial court must determine whether the limits of the territory to be annexed have been accurately described and an accurate map thereof made and filed. Ark. Code Ann. § 14-40-603. In *Chastain, supra,* the court held that it was sufficient that the area proposed for annexation was not changed or increased by any amendments to the petition for annexation. Here, three maps were filed by appellees; each map differed in its description of the amount of square footage subject to annexation. Nevertheless, although the property description in the maps differed, the property description in the petition remained the same. We hold that the trial court did not err in ruling that Arkansas Code Annotated section 14-40-603 was not violated.

■ Fourth, appellants argue that the circuit court erred in ruling that the appellees' petition for annexation was right and proper. Appellants cite *Vestal v. Little Rock*, 54 Ark. 321, 15 S.W.891 (1891). The court in *Vestal* stated that all property included in the proposed annexation area must comply with at least one of the following requirements:

(1) Platted or held for sale or use as municipal lots;
(2) Whether platted or not, if the lands are held to be sold as suburban property;
(3) When the lands furnish the abode for a densely settled community or represent the actual growth of the municipality beyond its legal boundary;
(4) When the lands are needed for any proper municipal purposes such as for the extension of needed police regulation;

(5) When they are valuable by reason of their adaptability for prospective municipal uses.

*Id.* at 323–24, 15 S.W. at 892. The burden of proof in an action to prevent annexation is placed on the aggrieved citizens protesting the government annexation. *Town of Houston, supra* (citing *Gay v. City of Springdale,* 298 Ark. 554, 769 S.W.2d 740 (1989)). If a part of the proposed area does not meet one of the five requirements, the annexation of the entire area is void *in toto. Id.*

 Other jurisdictions that have addressed this issue have developed lists of criteria to be considered; however, the general test for annexation is based on a reasonableness standard. The Mississippi Supreme Court has stated that in annexation cases the outcome-determinative question is the reasonableness of the proposed annexation. *Extension of the Boundaries of the City of Batesville, Panola County v. City of Batesville,* 760 So.2d 697 (Miss. 2000). The Mississippi Supreme Court recognized at least eight indicia of reasonableness, noting that the factors are but indicia of reasonableness and not separate or distinct tests in and of themselves. *Id.* The eight basic factors include:

(1) the municipality's need for expansion,
(2) whether the area sought to be annexed is reasonably within a path of growth of the city,
(3) the potential health hazards from sewage and waste disposal in the annexed areas,
(4) the municipality's financial ability to make the improvements and furnish municipal services promised,
(5) the need for zoning and overall planning in the area,
(6) the need for municipal services in the area sought to be annexed,
(7) whether there are natural barriers between the city and the [proposed annexation area], and
(8) the past performance and time element involved in the city's provision of services to its present residents.

*Id.* at 700. Other judicially recognized indicia of reasonableness include:

(9) the impact (economic or otherwise) of the annexation upon those who live in or own property in the area proposed for annexation; *Western Line,* 465 So.2d at 1059,
(10) the impact of the annexation upon the voting strength of protected minority groups, *Yazoo City,* 452 So.2d at 842–43,

(11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and for the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the (economic and social) benefits of proximity to the municipality without paying their fair share of the taxes, *Texas Gas Transmission Corp. v. City of Greenville*, 242 So.2d 686, 689 (Miss.1970); *Forbes v. City of Meridian*, 86 Miss. 243, 38 So. 676 (1905); and

(12) any other factors that may suggest reasonableness vel non. *Bassett*, 542 So.2d at 921.

*Id.* at 700. The chancellor must consider all of these factors and determine whether under the totality of the circumstances the annexation is reasonable. *Id.*

The State of Tennessee also utilizes a reasonableness standard for challenges to annexation. *City of Kingsport v. State ex rel. Crown Enterprises, Inc.*, 562 S.W.2d 808 (Tenn.1978). In *Kingsport*, the Tennessee Supreme Court delineated factors to be considered in determining the reasonableness of a proposed annexation: the necessity for, or use of, municipal services; the present ability and intent of the municipality to render municipal services when and as needed; and whether the annexation is for the sole purpose of increasing municipal revenue without the ability and intent to benefit the annexed area by rendering municipal services. *Id.* The court should also consider whether annexation will benefit the citizens of the municipality and whether failing to annex the proposed area will inhibit the growth of the annexing municipality. *See Vollmer v. City of Memphis*, 792 S.W.2d 446 (Tenn. 1990).

The Missouri Court of Appeals has held that there are twelve factors to be weighed when deciding whether a decision to annex was reasonable and necessary:

(1) a need for residential or industrial sites within the proposed area;

(2) the city's inability to meets its needs without expansion;

(3) consideration only of needs which are reasonably foreseeable and not visionary;

(4) past growth relied on to show future necessity;

(5) in evaluating future needs, the extent to which past growth has caused the city to spill over into the proposed area;

(6) the beneficial effect of uniform application and enforcement of municipal zoning ordinances in the city and in the annexed area;

(7) the need for or the beneficial effect of uniform application and enforcement of municipal building, plumbing and electrical codes;

(8) the need for or the beneficial effect of extending police protection to the annexed area;

(9) the need for or beneficial effect of uniform application and enforcement of municipal ordinances or regulations pertaining to health;

(10) the need for and the ability of the city to extend essential municipal services in the annexed area;

(11) enhancement in value by reason of adaptability of the land proposed to be annexed for prospective city uses; and

(12) regularity of boundaries.

*City of Rolla v. Armaly*, 985 S.W.2d 419, 431 (Mo. Ct. App. 1999) (quoting *City of Centralia v. Norden*, 879 S.W.2d 724, 727 (Mo. Ct. App.1994)). The presence or absence of any individual factor is not determinative, and reasonableness and necessity must be judged on a case-by-case basis. *Id.*

There is credible testimony in this case that the annexation was right and proper both under the factors set out in *Vestal* and the reasonableness standard utilized by other jurisdictions. As president of Guaranty Loan & Real Estate Company, Randall Catt testified that it was Guaranty Loan & Real Estate Company's intention to be a part of the City of West Memphis and to develop and plat the property for municipal purposes or municipal lots. Guaranty determined that the subject property has reached a value that made it desirable and economical to develop based on the inclusion of the property into the City of West Memphis. Moreover, the City of West Memphis agreed to provide utilities on the subject property. The circuit court specifically found that, "the affected property has reached a value which makes it desirable and economical to develop, and the value of the affected property is based upon its inclusion into the City of West Memphis." In conclusion, the annexation was reasonable and the requirements of *Vestal* have been satisfied. This being the case, we hold that the circuit court's decision is not clearly erroneous. *See Town of Houston, supra.*

Affirmed.

ROBBINS and ROAF, JJ., agree.