Hal O. LEE, et al. *v.* CITY OF PINE BLUFF

85-312 710 S.W.2d 205

Supreme Court of Arkansas
Opinion delivered June 9, 1986

*Henry & Duckett*, by: *David P. Henry*, for appellant.

*Robert Tolson, Jr.*, for appellee.

DARRELL HICKMAN, Justice. This is an annexation case involving the City of Pine Bluff. Pine Bluff sought to extend its boundaries to conform to the actual growth of the city beyond its legal limits and to encompass land needed for municipal purposes. The proposal, by way of an ordinance, included eight separate tracts of contiguous land spaced around the existing city limits. The area encompasses 9,147 acres and includes over 6,000 people. The annexation was approved at an election and a map was duly filed reflecting the new city limits. Several landowners from some of the annexed tracts filed suit protesting the annexation.

The trial court found that each tract of land in one respect or another was proper land for annexation according to Ark. Stat. Ann. § 19-307.1 (Repl. 1980). That statute provides:

Any municipality may by vote of two-thirds of the total number of members making up its governing body adopt an ordinance to annex lands contiguous to said municipality, provided the lands are either (1) platted and held for sale or use as municipal lots; (2) whether platted or not, if the lands are held to be sold as suburban property; (3) when the lands furnish the abode for a densely settled community, or represent the actual growth of the municipality beyond its legal boundary; (4) when the lands are needed for any proper municipal purposes such as for the extension of needed police regulation; or (5) when they are valuable by reason of their adaptability for prospective municipal uses.

Provided, however, that contiguous lands shall not be annexed when they either: (1) have a fair market value at the time of the adoption of the ordinance of lands used only for agriculture or horticulture purposes and the highest and best use of said lands is for agriculture or horticulture purposes; or (2) are lands upon which a new community is to be constructed with funds guaranteed in whole or in part

by the federal government. . . . Provided, further, that if any lands are annexed which are being used exclusively for agricultural purposes, such lands may continue to be used for such purposes so long as the owner desires and shall be assessed as agricultural lands.

Land that satisfies any one of the statutory criteron may be annexed. *Holmes* v. *City of Little Rock*, 285 Ark. 296, 686 S.W.2d 425 (1985).

Some lands used exclusively for agricultural purposes and some lands located in flood plains were included. Expert witnesses and landowners, who testified for the appellants, pointed out tracts of land or parts of tracts that were not properly annexed in their opinion. Primarily the witnesses focused on land south of the city limits. Opinions were offered that this area was too sparsely populated, did not need city services, or was a flood plain, and agricultural land not subject to annexation. Witnesses supporting the city's annexation testified at length about the characteristics of the land, its suitability, and the need for attachment to the city. A comprehensive land use plan prepared by the City Planning Commission was introduced. Testimony was given concerning the city officials' consideration of the annexation prior to its approval. In a detailed judgment, the trial judge found that the landowners failed to prove the lands were not subject to annexation. A question regarding the legal description of the land to be annexed was resolved in favor of the city.

This appeal raises three contentions: (1) not all lands comply with the criteria of Ark. Stat. Ann. § 19-307.1; (2) agricultural lands were improperly included in violation of Ark. Stat. Ann. §19-307.1; and (3) the legal description of the annexed lands failed to comply with Ark. Stat. Ann. § 19-307.2. We find no merit to appellants' arguments.

It is perhaps significant that the appellants rely in part on *Saunders* v. *City of Little Rock*, 262 Ark. 256, 556 S.W.2d 874 (1977). This case reviewed the proposed annexation of 55 square miles to the City of Little Rock. We rejected the proposed annexation on the narrow ground that the inclusion of mining lands voided the entire proposal. Our decision in *Saunders* was sharply limited in *Holmes* v. *City of Little Rock, supra,* and expressly overruled in *Chappell* v. *City of Russellville*, 288

Ark. 261, 704 S.W.2d 166 (1986). (In *Chappell*, we incorrectly cited *Saunders* v. *City of Little Rock*, 257 Ark. 195, 515 S.W.2d 663 (1974) [*Saunders I*] as being overruled; it should have read *Saunders* v. *City of Little Rock*, 262 Ark. 256, 556 S.W.2d 874 (1977) [*Saunders II*]. When we overruled *Saunders II*, we also abandoned the strict approach taken by us toward annexation. No longer do cities seeking annexation carry an undue legal burden. Our rules for review are clearly stated in *Holmes* v. *City of Little Rock, supra*:

> The rules controlling appellate review of annexation cases in Arkansas are well settled. A majority of electors voting in favor of annexation makes a *prima facie* case for annexation, and the burden rests on those objecting to produce sufficient evidence to defeat the *prima facie* case. (Cites omitted). By the very nature of this type of litigation, there is a wide latitude for divergence of opinion and consequently, a high degree of reliance must be placed upon the findings of the trial judge (Cite omitted). This court's task is not to decide where the preponderance of the evidence lies, but solely and simply to ascertain whether the trial court's findings of fact are clearly erroneous. ARCP Rule 52.

Our decisions since reflect a consistent application of these standards. *Chappell* v. *City of Russellville, supra*; *Gay* v. *City of Springdale*, 287 Ark. 55, 696 S.W.2d 723 (1985). With the standard set forth in *Holmes* in mind, we review the trial court's findings regarding each tract. They deserve verbatim recitation, for it is the appellants' burden to prove them clearly wrong; those findings of fact are included as an addendum to this opinion.

The appellants mainly attack the annexation of tracts which include flood plains and agricultural lands. They are tracts 2A, 2B, 2C, 4 and 6. These tracts are south, southwest and southeast of the city limits of Pine Bluff. All include some residential property, some more than others; some include small farms of 2 ½ to 20 or 30 acres. Tract 6, which straddles the main traffic arteries southwest of the city and the intersection of Highway 65 and 65B, includes several trailer parks and a 750 acre farm. That land is directly in the path of city growth toward the airport and is adjacent to a new industrial mall. Some of the

appellants' witnesses conceded the mall will make all adjoining property more valuable for development including part of the farm. Even the owner of the farm conceded the farm and along the highway next to the mall would be enhanced in value. No one proposed a line where that increased value would begin or end on the farm. Thirty-eighth Street cuts through this farm. The fact that the land is agricultural and the owner does not want it developed does not determine its fate as to annexation. *Planque* v. *City of Eureka Springs*, 243 Ark. 361, 419 S.W.2d 788 (1967). The owner will not have to abandon its use and its assessment for taxation shall be as agricultural land. Ark. Stat. Ann. § 19-307.1 (Repl. 1980).

In *Holmes*, when we approved annexation of land that included a pecan orchard, we said:

> . . . .While a pecan orchard exists on a part of the tract, it is permissible to annex a tract of land if that tract is more valuable for city purposes than for agriculture, even if the one tract is more valuable for farming purposes than for city purposes.

Simply because land is in a flood plain does not exclude it from consideration for annexation. *Holmes* v. *City of Little Rock, supra*. In this case the flood plain generally separates the existing city limits from a growing residential area beyond the flood plain. If a city could not encompass a flood plain, it would mean its legal boundary could not be extended beyond a low lying area, creek or swampland, although the growth of the urban area continued on the other side; or it would mean the city limits would somehow have to jump or go around the flood plain. The trial court found the proposal in this respect in compliance with the statute. The court listened to the testimony, observed the witnesses, saw the exhibits, and determined the flood plain did not prevent annexation.

Altogether, the city's proposed annexation proves to be an honest effort by Pine Bluff to extend its boundaries to encompass the actual growth of the city and land needed for municipal purposes as defined by law. That does not mean we will recognize annexation proposals that are essentially land grabs beyond the actual growth of the city with no serious goal of responsible land

use planning. *Gay v. City of Springdale, supra.*

We find that the appellants have failed to meet their burden of demonstrating that the trial judge was clearly wrong. There is ample evidence to support all his findings.

 The argument regarding the legal description of the land is a question of law. Ark. Stat. Ann. § 19-307.2 provides "[t]he annexation ordinance shall (1) contain an accurate description of the lands desired to be annexed." Rather than specify each tract separately with a legal description encompassing the proposed land, the city described all the land by metes and bounds as "the area included in the following description not currently in the City of Pine Bluff." The description encompassed the existing city limits and the eight tracts to be annexed. One expert witness testified for the appellants that the description could not be drawn to satisfy the statutory requirements; one expert for the city said that while it was not the best description, he could, with the aid of the map referred to in the ordinance, plat the new city limits. In *Parrish v. City of Russellville*, 253 Ark. 1000, 490 S.W.2d 126 (1973), we held that a legal description, which described merely a line, did not comply with statutory requirements. That case is distinguishable. Here a map was referred to in the ordinance, undoubtedly one of the exhibits at the trial, and was duly filed with the circuit clerk after the election. The trial court found that ". . . although the method of description used herein may not be the most desirable it does properly and sufficiently describe the property sought to be annexed." That conclusion is not clearly wrong.

Affirmed.

PURTLE, J., dissents.

## ADDENDUM

The plaintiffs own land or live in one of the following areas being annexed, viz, Area 1, 2, 6 or 8. Areas 1 and 2 extend from the northeast part of Pine Bluff to the southwest part of Pine Bluff. Northwest, west and southwest represents the direction of city growth for residential, considerable commercial and some major industrial growth. There is no question that these areas sought to be annexed are largely platted and held for sale or use as municipal lots; and/or whether platted or not, are held to be sold

as suburban property. They furnish the abode, in much of the area, for densely settled communities, or represent the actual growth of the municipality beyond its legal boundaries. The flood plain area which divides the city is needed for proper municipal purposes such as proper development regulation, police and fire protection and flood control. The lands' highest and best use is for something other than agriculture or horticulture.

No one who owned land or lived in areas #3, #4, or #5 has opposed the annexation. Areas #3 and #5 are almost solely residential and clearly lands held to be sold as suburban property and do represent the actual growth of the municipality beyond its legal boundaries. Both are fast growth areas for residential development. Area #3 is located in close proximity to the Rosswood Country Club and many new residential developments. Area 5, on the south end of Ohio Street is relatively small with several new dwellings and is an extension of the city beyond the city limits.

Area #4 encompasses land on either side of Highway 15 South with the west boundary thereof being the present city limits and the east boundary running, more or less, parallel with Highway 15 South. On the north end of this area we find a rather wide flood plain and from there south several commercial businesses and many homes. There are some residential developments on and off Highway 15 South in this area. Highway 15 South constitutes the only reasonable route for access to the extreme southern part of Pine Bluff which is immediately west of Area #4. Emergency vehicles must go outside the city limits to serve the southernmost part of Pine Bluff. This southernmost area of Pine Bluff (between area #3 and area #4 sought to be annexed) is well developed subdivisions of family dwellings. This area #4 definitely represents the actual growth of the city beyond its legal boundaries and is needed for proper municipal purposes as for the extension of police and fire protection, flood control and proper land management and planning in this area.

Area #6, a part of which is platted, is located on both sides of Highway 65 South and a small strip east of the Martha Mitchell Expressway. Thirty-eighth Street from the present city limits intersects Highway 65 near the middle of this area. These transportation arteries, which are major ones in the City of Pine

Bluff merge near the center of area #6. Approximately 600 people live in this area. There are quite a few residential type homes, four rather large mobile home parks and several commercial businesses. The municipal airport is located just south of this area. There has been rapid development of residences and commercial business in the immediate area, and in the vicinity of area #6, an industrial mall costing millions is being constructed at this time adjoining this area immediately between Highway 65B and Highway 65. The present city limits move back and forth across Highway 65 in this area. Emergency vehicles move in and out of the city limits when going from northeast Pine Bluff to southeast Pine Bluff or vice versa. This area #6 furnishes the abode for an area that is partially a densely settled community, and the whole area represents the actual growth of the city beyond its legal boundaries. Also the strip of land on the east and north of Highway 65 are lands needed for proper municipal purposes such as for the extension of needed police and fire regulation and protection, proper land use planning, sewage and drainage.

Area #7, a part of which is platted, is land between Lake Langhoffer (Slackwater Harbor) and Cotton Belt Shops which is already in the city limits. This area includes the Pine Bluff Industrial Park on the Slackwater Harbor. There are eleven or more industrial businesses within the park and others near the southern end of the area. There is a densely settled community at the southernmost end of this area. This whole area distinctly, in part, furnishes the abode for a densely settled community and all of it represents the actual growth of the city beyond its legal boundaries.

Area #8 includes Lake Pine Bluff (which is presently surrounded on three sides by the city limits) and lands along both sides of Highway 79 North extending north of the city limits. Highway 79 and University Street are one and the same within the city limits. The present city limits weave back and forth across Highway 79 North (University Street) in this area and there are many residences and numerous commercial establishments included in the area sought to be annexed. This area represents, without doubt, the actual growth of the city beyond its legal boundaries and also the lands along University, Oliver, and Spruce Streets are needed for proper municipal purposes such as the extension of needed police and fire protection in these and

adjoining areas. This would alleviate the necessity of emergency vehicles going outside the city limits to gain access to certain areas which are fairly densely populated.

The city has complied with Ark. Stat. Ann. §19-307.1, and all the lands sought to be annexed were adequately described and meet at least one of the criteria required for annexation.

JOHN I. PURTLE, Justice, dissenting. In Arkansas, cities are creatures of the General Assembly and exercise only those rights and privileges conferred upon them by law. Likewise their responsibilities are generally defined by statute. The legislature has granted cities the right to annex contiguous territory under certain circumstances. The majority opinion correctly identifies the appropriate statutory authority as Ark. Stat. Ann. § 19-307 et seq. This statute specifies the five conditions for annexation. Any one of the five grounds qualifies the area for possible annexation. However, Ark. Stat. Ann. § 19-307.1 states:

> [C]ontiguous lands shall not be annexed when they either: (1) have a fair market value at the time of the adoption of the ordinance of lands used only for agriculture [agricultural] or horticulture [horticultural] purposes and the highest and best use of said lands is for agricultural or horticulture [horticultural] purposes; or (2) . . . .

The other statute pertinent to this dissent is Ark. Stat. Ann. § 19-307.2 (1) which requires the municipality to enact an ordinance containing an *accurate description* of the lands proposed to be annexed. It is my opinion that much of the nine thousand acres to be annexed were agricultural and that there was no accurate description of the annexed area contained in the ordinance of annexation.

One of the exceptions to contiguous lands which may be annexed is lands which have a fair market value of lands used only for agricultural or horticultural purposes, and their highest and best use is for such purposes. See Ark. Stat. Ann. § 19-307.1. Annexation of excluded lands is void. *Saunders* v. *City of Little Rock*, 262 Ark. 256, 556 S.W.2d 874 (1977). I realize this Court trampled on *Saunders* to some extent in *Holmes* v. *City of Little Rock*, 285 Ark. 296, 686 S.W.2d 425 (1985). However, the law has not changed. We clearly stated the law in *Chappell* v. *City of*

*Russellville*, 288 Ark. 261, 704 S.W.2d 166 (1986), when we stated, "If a part of the proposed area does not meet one of the requirements, then the entire area is voided in toto." In *Holmes* we stated, "There was an abundance of testimony in this case that all the land being annexed was best suited for residential and commercial purposes rather than for agricultural purposes. Before 1975, lands used for agricultural purposes could not be annexed." Also, in *Gay* v. *City of Springdale*, 287 Ark. 55, 696 S.W.2d 723 (1985), we held, as in *Holmes*, that farmlands may be annexed if their highest and best use is for a purpose other than agricultural.

The area annexed in the present case contains one dwelling unit per 5 acres of land. Mr. Ben Pierce testified he had a sod farm containing more than 100 acres. This farm land was located in the floodway where there was no potential other than for agricultural purposes. Mr. Dean Parker testified that there was a 160 acre farm adjacent to his residence. In addition, Robert W. Phillips testified that he and his family had owned 750 acres of land since 1814 and it had always been used as farm land. This farm was also located in the flood plains. His testimony was that the highest and best use of the land was for agricultural purposes and that it had no fair market value for any other use. This testimony was not disputed except by generalization and inference of employees of the City. The law has not changed since *Chappell, Holmes, Gay* and *Saunders*. In none of these cases have we held that farmlands, which are used as such, and such use is the highest and best use, are subject to involuntary annexation. Nor does the law permit it. There is no basis in the record to support the finding by the trial court that the highest and best use of these farm lands was for some other purpose. The vote in the areas of annexation in the present case was 9 to 1 against the proposal. The ratio of population in the annexed area and the existing City is about 65 to 1. In my opinion the majority is granting unlimited power to municipalities to annex any and all lands so long as they are contiguous to the municipality or contiguous to contiguous land even if the highest and best use is for agricultural purposes. I submit such was not the intent of the legislature when it enacted the annexation statutes.

The description of the annexed lands was contested in the trial court. I believe the description of the lands proposed for

annexation is not accurate. Basically the description commenced at a point on the existing city boundary and encircled all the areas proposed for annexation, including the already incorporated area of the City, and purportedly returned to the point of beginning. None of the tracts proposed for annexation were described to the extent one could identify the individual tract. In *Parrish* v. *City of Russellville*, 253 Ark. 1000, 490 S.W.2d 126 (1973), this court held that a description was inaccurate when it commenced at a point on the existing city boundary and terminated at another point on the city boundary. The description in *Parrish* was exactly as it is in the present case as it relates to each of the ten areas proposed for annexation. No single area is encircled by the proposed boundary. As to each tract the description is incomplete and inaccurate. We had a similar situation in *City of NLR* v. *Garner*, 256 Ark. 1025, 511 S.W.2d 656 (1974), wherein we held the description to be inaccurate. In *Garner* the description started at a point on the existing city boundary and ended at the Arkansas River. Clearly, as in *Parrish*, a geographical area was identified but we nevertheless held such description to be *inaccurate*. The annexing ordinance did not at any time describe the geographic boundary of any area to be annexed. I have searched the record and find no evidence that a map of the area proposed for annexation was filed until after the election. It would not have been possible for the average citizen to have determined the areas included in the proposal by looking at the ordinance. The metes and bounds description was defective in my opinion. A "land grab" of this magnitude should not be allowed without full compliance with the law. A city cannot annex another city and certainly common sense and the law tells me it cannot annex itself. The finding that the description properly and sufficiently described the lands to be annexed did not rise to the legal requirement that the area be "accurately" described.

I would reverse and dismiss.