

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00080-CR
_____

JOHN ALFRED PETERSEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 29259

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

## MEMORANDUM OPINION

After a jury found John Alfred Petersen guilty of criminal mischief over $2,500.00, but less than $30,000.00, he was sentenced to one year's confinement in a state jail and assessed a fine of $3,300.00. On appeal, Petersen contends that he received ineffective assistance of counsel because his counsel (1) refused to strike a hostile panel member during jury selection, (2) failed to hold the State to its burden of proving felony jurisdiction, (3) failed to challenge the admissibility of extraneous-offense evidence, (4) failed to object to the admissibility of the statements he made while in custody, and (5) failed to challenge the State's punishment evidence.[1] Because we find that Petersen did not receive ineffective assistance of counsel, we affirm the trial court's judgment.

## I. Background

On March 4, 2021, Cara Welch was parked in the "parent pickup" line at Crockett Intermediate School in Paris, Texas, waiting to pick up her child. Her son, Carter, was also in the vehicle with her. Welch explained, "While we were waiting, we heard and felt something hit our car. When we looked to find out what hit our car, I saw Mr. Petersen backed into us" with his motorized wheelchair.[2] Welch said that, when she rolled down her window to see what had happened, Petersen's back was to her vehicle. For a moment, Welch thought that Petersen might have accidentally backed into her. Welch asked Petersen if he knew that he had hit her vehicle. Petersen informed her that he did, in fact, know that he had hit her car and that he would keep

---

[1] Petersen also maintains that trial counsel's cumulative errors require reversal. Because we find no error, we need not address this point of error.

[2] Peterson's wheelchair was also referred to as a "scooter."

2

running into her until she moved her vehicle. When Welch asked Petersen what he meant, Petersen told her that she was blocking the crosswalk. Welch told Petersen that there was room on the sidewalk for him to pass. In response, Petersen again hit her vehicle with his wheelchair.

According to Welch, Petersen ran into her vehicle at least ten times.[3] Welch said, "He's pulling forward and backing up into different angles back and forth. And even with my window down and my son crying frantically, he doesn't stop." Welch also explained that she was afraid to exit her vehicle to speak with Petersen, so she contacted 9-1-1 and asked for police assistance.

At some point during the incident, another individual exited his vehicle and asked Petersen why he was hitting Welch's car with his wheelchair. According to Welch, Petersen said, "[S]he won't move." Welch said that, because of her position in the pick-up line, she believed she was unable to move her vehicle. At that point, the same individual tried to help Welch move her vehicle. Welch explained, "When I put my car into drive and started to move up [an] inch, I look in my rear view and Mr. Petersen is already headed down the sidewalk toward Lamar." Welch said that, as a result of Petersen's actions, the right fender of her vehicle was damaged, and the repair costs amounted to $3,323.79.[4]

On cross-examination, Welch stated that neither she nor her child was physically injured during the incident. However, Welch said that her child had been "emotionally injured" and that she had set up counseling services for him. According to Welch, Petersen's actions had been deliberate.

---

[3]Photographs of the damage to Welch's vehicle were admitted into evidence.

[4]The State offered, and the trial court admitted, the written estimate of the damages to Welch's vehicle.

3

Cynthia Johnson, who was also at the school to pick up her grandchild, recorded the incident on her cell phone.[5] Johnson said that Welch could not move her vehicle because "everybody [was] kind of right up on the other person."

On March 4, 2021, Jeremy Helms, an officer with the Paris Police Department, responded to a disturbance at Crockett Intermediate School. Helms said that, when he arrived at the school, another officer asked him to try to locate the "subject in the wheelchair." Helms quickly located Petersen and asked him about the "reports of him ramming his wheelchair into a car." Petersen advised that "they were parked in his road -- or sidewalk." Petersen admitted that he ran his wheelchair into Welch's vehicle.[6] Helms informed Petersen that it was illegal for him to run his wheelchair into Welch's vehicle even if he believed that she was illegally parked. According to Helms, towards the end of his conversation with Petersen, Petersen threatened to go back to the school and "do it again." Regardless, at that juncture, it was determined that Petersen would not be placed under arrest. Yet, Helms told Petersen that Welch would be making a report of the incident. Petersen then left in his wheelchair, and Helms returned to his patrol car and drove away.[7]

---

[5]The trial court admitted the recording from Johnson's cell phone. The contents of the recording corroborated Welch's version of events.

[6]Helm's interaction with Peterson was recorded on his body-worn camera. The recording was admitted into evidence.

[7]About a month later, a Lamar County grand jury indicted Petersen for felony criminal mischief. *See* TEX. PENAL CODE ANN. § 28.03(a)(1), (b)(4)(A) (Supp.).

## II. Applicable Law

As many cases have noted, the right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). To prevail on a claim of ineffective assistance of counsel, a defendant is required to satisfy the two-pronged test set forth by the United States Supreme Court. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see also Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding). The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "This measure of deference, however, must not be watered down into a disguised form of acquiescence." *Profitt v. Waldron*, 831 F.2d 1245, 1248 (5th Cir. 1987) (orig. proceeding) (finding ineffective assistance where counsel failed to request medical records and relied on court-appointed competency examination when he knew client had escaped from mental institution).

The second *Strickland* prong, often called "the prejudice prong," requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* Thus, to establish prejudice, an applicant must show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable." *Id.* at 687. It is not sufficient for applicant to show "that the errors had some conceivable effect on the outcome of the

5

proceeding." *Id.* at 693. Rather, he must show that "there is a reasonable probability that, absent the errors, the fact[-]finder would have had a reasonable doubt respecting guilt." *Id.* at 695.

The appellant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Busby v. State*, 990 S.W.2d 263, 268–69 (Tex. Crim. App. 1999). The reviewing court must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias. *Strickland*, 466 U.S. at 690. In all cases, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id.* at 696; *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (orig. proceeding).

A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). "[A]llegation[s] of ineffectiveness must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813). The *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (quoting *Wright v. West*, 505 U.S. 277, 308–09 (1992) (Kennedy, J., concurring in judgment)).

When a claim of ineffective assistance of counsel is raised for the first time on direct appeal, the record "is in almost all cases inadequate to show that counsel's conduct fell below an

objectively reasonable standard of performance." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). Even so, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did." *Id.* Moreover, when the reviewing court "can conceive potential reasonable trial strategies that counsel could have been pursuing," the court "simply cannot conclude that counsel has performed deficiently." *Id.* at 103. Essentially, when a party raises an ineffective assistance of counsel claim for the first time on direct appeal, the defendant must show that, "under prevailing professional norms," *Strickland*, 466 U.S. at 690, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do, *Andrews*, 159 S.W.3d at 102.

## III. Analysis

### A. Refusal to Strike a "Hostile" Panel Member During Jury Selection

In his first point of error, Petersen maintains that his trial counsel was ineffective because he failed to use a preemptory challenge, or to challenge for cause, for a jury panel member who he considered to be "hostile." Specifically, Petersen points to the State's discussion with the panel about a hypothetical defendant's right not to testify. The State initially commented that a "defendant has the right not to testify." It then continued by explaining that the number one fear in America was the fear of public speaking, even more so than death. The State asked, "So knowing that public speaking is a lot of people's biggest fear, can you think of reasons why someone may not want to testify?" Panel member Minerd suggested that a person might be

7

hesitant to testify because "they don't want to say the truth." Trial counsel made no objection and did not ask to question Minerd any further. Other panel members responded to the State's question by either stating or agreeing that a person might not want to testify because "they don't want to leave anything out," they might not be able to communicate their thoughts very well, people sometimes get easily confused, and they are nervous. The State then pointed out that it was not necessary for a person to have *any* reason for choosing not to testify because the Constitution gave them that right. Following that statement, the State asked the jury panel to agree that it would not hold it against Petersen if he chose not to testify. No one on the jury panel, including Minerd, said that they would be unable to do so.

"Where the record does not support trial counsel's reason for failing to challenge or strike a particular veniremember, we must indulge the presumption that counsel's performance was adequate." *Hardin v. State*, 951 S.W.2d 208, 211 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (citing *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). Yet, the record in this case reveals at least one reason why trial counsel refrained from asking Minerd any additional questions and failed to challenge his inclusion on the jury. Addressing the court, Petersen's counsel explained,

> I wanted just to put in the record and make the Court aware that Mr. Petersen and I sat here in an empty courtroom for 20, 25 minutes probably. I explained to him challenges for cause, peremptory challenges. We discussed whom and why and what reasons to strike. He did not want anybody peremptorily struck from the panel, and so we only struck one alternate. I just want to make the Court aware that we went over the whole process thoroughly.

Citing *Ex parte Barbee*, Petersen contends, "[W]hile a defendant retains control over decisions that affect the objective of the defense—whether to plead guilty, waive a jury trial,

8

testify on one's behalf, or waive an appeal—the attorney retains control over the decisions about how best to achieve those objectives." *See Ex parte Barbee*, 616 S.W.3d 836, 842–43 (Tex. Crim. App. 2021) (orig. proceeding). In other words, regardless of the fact that Petersen had instructed counsel to refrain from striking any potential jurors, he now claims on appeal that counsel should have questioned Minerd further to "ascertain with certainty his willingness to indulge [Petersen]'s right to remain silent." Because he failed to do so, Petersen claims he received ineffective assistance of counsel.

We need not determine whether counsel's performance fell below an objective standard of reasonableness when he chose to abide by Petersen's instructions.[8] This is so because Petersen cannot satisfy the second *Strickland* prong, that is, he cannot show that he was harmed as a result of counsel's failure to act.

Although trial counsel did not make any subsequent inquiries of Minerd, the State had an entire conversation with the jury panel in relation to a person's right not to testify. In addition, the State made clear, through speaking to individual panel members and the entire panel, that there could be a myriad of reasons that a person chose not to testify. The State also explained that none of those reasons could be a basis for presuming that a defendant was guilty or that he chose not to testify because he would be forced to perjure himself. Moreover, the entire panel, including Minerd, agreed that, if *Petersen* chose not to take the stand, his decision could not be construed as evidence that he did not want to tell the truth. Consequently, any potential failure on counsel's part was remedied by the explanations and instructions given to the jury panel by

---

[8]That we do not address the first *Strickland* factor should not be interpreted as a finding that counsel's performance fell below an objective standard of reasonableness.

9

the State. Under those circumstances, Petersen cannot show that there is a reasonable probability that the result of the proceeding would have been different had counsel ignored his instructions.

We overrule Petersen's first point of error.

**B.     Failure to Object to Evidence of Damages to Welch's Vehicle**

A person commits the offense of criminal mischief if he damages or destroys another person's tangible property without the person's consent. TEX. PENAL CODE ANN. § 28.03(a)(1). "The 'value of pecuniary loss' or 'cost of replacing or repairing damaged property' is a crucial element of the offense because it forms the basis of punishment assessed." *Barnes v. State*, 248 S.W.3d 217, 220 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Elomary v. State*, 786 S.W.2d 191, 192–93 (Tex. Crim. App. 1990)). If the amount of pecuniary loss is $2,500.00 or more but less than $30,000.00, the offense is a state-jail felony. TEX. PENAL CODE ANN. § 28.03(b)(4). "If the property is damaged (as opposed to destroyed) the amount of pecuniary loss is determined by 'the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred.'" *Holz v. State*, 320 S.W.3d 344, 345 (Tex. Crim. App. 2010) (quoting TEX. PENAL CODE ANN. § 28.06(b)).

First, Petersen contends that Welch, the owner of the damaged vehicle, was not competent to testify as to the repair costs she incurred due to Petersen's actions. In other words, she was not an expert on the subject. The Texas Court of Criminal Appeals has "clarified that an unsupported lay opinion as to the value of damage is insufficient to prove the cost of repair, but the State need not present expert testimony to prove the cost of repairing the property." *Campbell v. State*, 426 S.W.3d 780, 784 (Tex. Crim. App. 2014) (citing *Holz*, 320 S.W.3d at

10

350). Consequently, it was not necessary for trial counsel to object to the State's failure to present an expert on the amount of damages to Welch's vehicle.

Petersen also complains that Welch's "opinion was informed by an estimate from a local body shop, but no predicate was laid for [Welch]'s personal knowledge of the cost of repair, other than what had been reported to her." As a result, Petersen maintains that Welch's statement regarding the body shop's estimate of the cost of repairs was inadmissible hearsay testimony. "Hearsay" is a statement, other than one made by the declarant "while testifying at the current trial," "offer[ed] in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). According to the Rules, a "statement" means "a person's oral or written verbal expression, or nonverbal conduct that a person intended as a substitute for verbal expression." TEX. R. EVID. 801(a).

We agree with Petersen's assertion that Welch's statement as to the body shop's estimate was hearsay testimony. Welch was testifying to an estimated amount of repair cost that was a written statement made by a body shop employee. It was also made for the truth of the matter asserted, that is, that the estimated cost of repair amounted to $3,323.79. An objection by trial counsel would have been reasonable. Yet, that does not end our analysis.

In *Kinkade v. State*, 787 S.W.2d 507 (Tex. App.—Houston [1st Dist.] 1990, no pet.), Kinkade was charged with criminal mischief as a result of damaging Mabel Roberts's car.[9] *Id.* at 508. Kinkade was found guilty by a jury, sentenced to ten days' confinement in jail, and ordered to make restitution of $177.65. *Id.* On appeal, Kinkade maintained that the trial court erred

---

[9]Kinkade was alleged to have hit the car's sideview mirror and shattered its back window. *Kinkade*, 787 S.W.2d at 508.

11

when it admitted Roberts's testimony about the cost of repairs. According to Kinkade, it was necessary for an expert witness to testify "because 'value' and 'reasonableness of amount' [were] part of the State's burden of proof." *Id.* at 509. The Houston Court of Appeals stated,

> We have already decided that "cost of repair" is the proper method of proving pecuniary loss, and proof as to the "reasonableness" of the amount of repairs is not required. The owner of the car, who has direct knowledge of the actual cost of repairs, is certainly competent to testify as to how much she spent to repair the damage.

*Id.* (citing *Sepulveda v. State*, 751 S.W.2d 667, 668–69 (Tex. App.—Corpus Christi 1988, pet. ref'd)).

Welch not only testified to the estimate she received from the auto body shop, but she also testified to what the repairs actually cost. Welch was asked how much it cost to have her vehicle repaired. She answered, "$3,323.79." She also explained that her insurance company covered a portion of the expense and that she paid the insurance deductible. Welch's testimony as to how much she *actually* paid for the repair to her vehicle must be distinguished from her testimony regarding the body shop's estimate. As the court explained in *Kinkade*, certainly, as the owner of the vehicle, Welch was competent to testify as to how much she spent to have her car repaired.[10] Also, Petersen had the opportunity to cross-examine Welch as to the expenses she incurred because of the damage to her vehicle.

In addition, there were also photographs in the record showing the damage to Welch's vehicle. Those photographs revealed several very deep scratches on and around the wheel well

---

[10]Welch testified about the estimate before she testified as to how much she actually paid to have her vehicle repaired. Regardless, trial counsel could have reasonably anticipated the State's subsequent questioning regarding the actual cost of repair and made a strategic decision not to object to Welch's testimony regarding the written estimate.

of the rear portion of the passenger side of the vehicle. Thus, in addition to Welch's testimony that she was required to pay "$3,323.79" to have her vehicle repaired, the jurors had the opportunity to view photographs of the damage to her vehicle, thereby giving them the opportunity to determine whether they believed the damages amounted to over $2,500.00.

Trial counsel could have chosen not to object to the admission of the body shop's written estimate or Welch's testimony regarding that estimate because the same or similar information would reach the jury through the previously admitted photographs and Welch's testimony as to how much she actually paid to have her vehicle repaired. Further, Petersen's counsel could have reasonably believed that it was to Petersen's benefit for Welch to testify that her insurance had partially paid for the $3,323.79 worth of repairs to her car. Likewise, Welch's testimony that the damages amounted to $3,323.79 was at the low end of the range of damages, that is, $2,500.00 to $30,000.00. Trial counsel could have chosen not to object to the complained-of testimony to minimize any potential restitution Petersen might be ordered to pay.

For these reasons, we conclude that trial counsel's performance in failing to object to the admission of the auto body shop's written estimate and Welch's testimony regarding that estimate did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688.

We overrule Petersen's second point of error.

13

**C.     Failure to Challenge the Admission of Extraneous-Offense Evidence**

Arguing that trial counsel was ineffective for failing to object to the admission of extraneous-offense evidence, Petersen points to the testimony of State's witness Johnson, who was present at the scene and recorded the incident on her cell phone:

> Q      Okay.  Were you -- there wasn't any sound on [the recording].  Was there sound?
>
> A      Well, yes.  I had never seen nothing like that before.  I told him not to put the sound because I didn't mean to call Mr. Petersen a fool; but I just said, Somebody needs to get that fool.  And so I told him to not put that sound on there.
>
> Q      I see.  So there was just kind of, what we call, some little salty language on that video?
>
> A      No, that was the only thing.  I didn't cuss.  I don't curse.
>
> Q      All right.
>
> A      That was -- that was for him to be his age, I -- I wasn't raised to even say stuff like that, so.
>
> Q      Okay.  All right.
>
> A      And, actually, that was only whatever minutes.  *I missed the first two minutes because I thought I was recording because he hit the truck behind.  I backed up so that the truck could -- he could -- he hit the truck about three times.*  So I backed my car up so that the truck could back up.  She happened to have been on the other side of that truck that you see the -- the girl come out of.

(Emphasis added).

Petersen maintains that his "[c]ounsel never objected to Johnson's nonresponsive testimony.  He never sought to exclude this evidence of an alleged extraneous offense, one identical in time and scope to the offense for which he was on trial."  He also complains that counsel failed to ask the trial court to admonish the jury to disregard Johnson's testimony, "never

sought to have Johnson reprimanded for her extemporaneous ramblings," and never moved for a mistrial. The State contends that Petersen's trial counsel could have chosen not to object to the complained-of evidence because he strategically believed that the cell phone recording and Johnson's testimony were same-transaction contextual evidence. Consequently, it was an explicit exception set out in Rule 404(b) of the Texas Rules of Evidence.

All relevant evidence is admissible unless it is excluded by law. TEX. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. On the other hand, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." TEX. R. EVID. 404(a)(1). Evidence of other bad acts may be admissible, however, for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2); *see Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

In addition to the explicit exceptions set out in Rule 404(b)(2), extraneous-offense evidence may be admissible as contextual evidence. *Camacho v. State*, 864 S.W.2d 524, 531–32 (Tex. Crim. App. 1993). There are "two types of background evidence: (1) evidence of other offenses connected with the primary offense, referred to as 'same transaction contextual evidence'[11] and (2) general background evidence, referred to as 'background contextual

---

[11]In *Rogers*, the Texas Court of Criminal Appeals explained:

> Same transaction contextual evidence is deemed admissible as a so-called exception to the propensity rule where "several crimes are intermixed, or blended with one another, or connected

15

evidence.'" *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (citing *Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991)).  Same transaction contextual evidence is admissible as an exception to Rule 404(b) when the evidence is essential for the State to rationally present evidence of the charged offense.  *Id.* at 33.  "Only if the facts and circumstances of the instant offense would make little or no sense without also bringing the same transaction contextual evidence, should the same transactional evidence be admitted."  *Id.* at 32.  Consequently, extraneous-offense evidence may, when appropriate, be admissible as same transaction contextual evidence.  *Lockhart v. State*, 847 S.W.2d 568, 570 (Tex. Crim. App. 1992).  On the other hand, background contextual evidence "fill[s] in the background of the narrative and give[s] it interest, color, and lifelikeness."  *Mayes*, 816 S.W.2d at 87.  However, background contextual evidence is not admissible for one of the "other purpose[s]" for which evidence may be admitted under Rule 404(b) if it includes an impermissible character component.  *Id.* at 88.

"Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court."  *See Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (quoting *Moses*, 105 S.W.3d at 627).  "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the court's ruling will be upheld."  *See id.*

---

so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others."  The reason for its admissibility "is simply because in narrating the one it is impracticable to avoid describing the other, and not because the other has any evidential purposes."  Necessity, then, seems to be one of the reasons behind admitting evidence of the accused's acts, words and conduct at the time of the commission of the offense.

*Rogers*, 853 S.W.2d at 33 (citations omitted).

16

Here, Petersen's trial counsel could have reasonably believed that Johnson's testimony regarding the events that occurred immediately prior to the incident at issue could have amounted to same transaction contextual evidence because Johnson's testimony helped make sense of the facts and circumstances of the charged offense. Moreover, trial counsel could have reasonably believed that the complained-of testimony was background contextual evidence because it filled in the background of events that occurred immediately prior to the occurrence of the charged offense. At any rate, trial counsel could have made the strategic decision not to unnecessarily draw more attention to Johnson's testimony by objecting to the complained-of evidence. Keeping in mind that there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, we do not conclude that Peterson's counsel's performance was ineffective based on his failure to object to Johnson's testimony or the admission of the cell phone recording showing the events immediately prior to the charged offense.

We overrule Petersen's third point of error.

### D. Failure to Object to the Admissibility of Petersen's Statements

In his fourth point of error, Petersen contends that his trial counsel was ineffective because (1) he failed to object to the admission of statements Petersen made while he was in what Petersen describes as "unlawful custody," and (2) counsel did not file a motion to suppress those statements. Petersen's argument lacks support in the record.

"The Fifth Amendment to the United States Constitution commands that no person 'shall be compelled in any criminal case to be a witness against himself[.]'" *Herrera v. State*, 241

17

S.W.3d 520, 525 (Tex. Crim. App. 2007) (alteration in original) (quoting U.S. CONST. amend. V). "The warnings set out by the United States Supreme Court in *Miranda v. Arizona* were established to safeguard an uncounseled individual's constitutional privilege against self-incrimination during custodial interrogation." *Id.* (citing *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)). This is because custodial interrogation places "'inherently compelling pressures' on the persons interrogated." *Thompson v. Keohane*, 516 U.S. 99, 107 (1995) (quoting *Miranda*, 384 U.S. at 467).

"Prior to any [custodial] questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney . . . ." *Coffey v. State*, 435 S.W.3d 834, 841 (Tex. App.—Texarkana 2014, pet. ref'd) (quoting *Miranda*, 384 U.S. at 444); *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008)). "Under both the Federal constitutional standard and the Texas Confession Statute, evidence obtained as a result of custodial interrogation is inadmissible unless the State proves the officer gave proper warnings and shows an affirmative waiver of rights by the accused." *Id.* at 840 (quoting *Hutchison v. State*, 424 S.W.3d 164, 175 (Tex. App.—Texarkana 2014, no pet.) (footnotes omitted) (citing TEX. CODE CRIM. PROC. ANN. art. 38.22)).

Yet, "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam). Also, Article 38.22's constraints on use of an accused's statement only

18

apply to custodial interrogations.[12] *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996).

As a result, "[i]f an accused is not in custody when he makes a statement, then the question of voluntariness does not arise." *Id.*

In *Herrera*, the Texas Court of Criminal Appeals explained that a defendant has the burden of proving that he was subjected to "custodial interrogation," stating,

> The mere filing of a motion to suppress does not thrust a burden on the State to show compliance with *Miranda* . . . warnings *unless* and *until* the defendant proves that the statements he wishes to exclude were the product of custodial interrogation. Thus, the State has no burden at all unless "*the record as a whole clearly establishe*[*s*]" that the defendant's statement was the product of custodial interrogation by an agent for law enforcement. It is the defendant's initial burden to establish those facts on the record.

---

[12]A defendant's oral statement, made after custodial interrogation, is inadmissible under Article 38.22 unless the following five requirements are met:

> First, "an electronic recording" of the statement must be made. Second, "prior to the statement but during the recording the accused [was] given the warning in Subsection (a) of Section 2 . . . and the accused knowingly, intelligently, and voluntarily waive[d] any rights set out in the warning." Under Section 2(a), before the statement is made, the accused is warned of the following:
>
> > (1) he has the right to remain silent and not to make any statement at all and that any statement he makes may be used against him at his trial;
> >
> > (2) any statement he makes may be used as evidence against him in court;
> >
> > (3 he has the right to have a lawyer present to advise him prior to and during any questioning;
> >
> > (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
> >
> > (5) he has the right to terminate the interview at any time.
>
> Third, under Section 3(a), it must be shown that "the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered." Fourth, there has been an identification of all the voices on the recording. And fifth, defense counsel was given "a true, complete, and accurate copy of all recordings" at least twenty days "before the date of the proceedings."

*Nguyen v. State*, 292 S.W.3d 671, 676 (Tex. Crim. App. 2009) (alterations in original) (quoting Tex. Code Crim. Proc. Ann. art. 38.22).

*Herrera*, 241 S.W.3d at 526 (alteration in original) (quoting *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex. Crim. App. 2005)).

The United States Supreme Court has clarified that whether an accused "is in custody turns on (1) a factual determination of the circumstances surrounding the interrogation and (2) a legal determination of whether, under the factual circumstances, a reasonable person would feel that he was not free to terminate the questioning and leave." *Calvin v. State*, 467 S.W.3d 647, 657 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Thompson*, 516 U.S. at 112–13). "Generally, a person is considered to be in custody for purposes of *Miranda* and Article 38.22 when: (1) the person is formally arrested; or (2) the person's freedom of movement is restrained to the degree associated with formal arrest." *Sloan v. State*, 418 S.W.3d 884, 889 (Tex. App.— Houston [14th Dist.] 2013, pet. ref'd) (citing *Thai Ngoc Nguyen v. State*, 292 S.W.3d 671, 677 (Tex. Crim. App. 2009)).

Here, Petersen was not formally arrested by Helms. He maintains, however that his freedom of movement was restrained to a degree that he believed he was under arrest. In support of his contention, Petersen directs us to a portion of the conversation that he had with Helms, which occurred on the sidewalk immediately after the incident at issue:

> Q     [Helms]: What's going on?
>
> A     [Petersen]: I have no earthly idea. I'm trying to go on the sidewalk.
>
> Q     [Helms]: Ok, well why do we get reports of you down there ramming your chair into cars?

> A    [Petersen]: Well, you need to go down there and get them for parking on the sidewalk . . .
>
> Q    [Helms]: . . . ok . . .
>
> A    [Petersen]: . . . and the cross-walk.
>
> Q    [Helms]: *but that does not give you the right to ram them with your chair.*

Based on that part of their conversation, Petersen contends that "[h]e was prevented from movement by [Helms]'s authority. He was accused – explicitly – of committing a crime, and yet he was not made aware of his Constitutional or statutory rights to remain silent." Petersen claims that "[a]ny statement he made thereafter was therefore inadmissible and should have been suppressed." According to Petersen, his trial counsel was ineffective because he failed to object to the admission of that portion of their conversation or to file a motion to suppress the recording of the conversation. We disagree.

Here, the recording of the conversation shows that Helms did not formally arrest Petersen. Instead, Helms initially asked Petersen for some general information regarding his identification, to which Petersen responded by telling Helms that he needed to go arrest Welch. Petersen then asked why Helms was speaking to him. Helms responded by informing Petersen that it was illegal for him to run his wheelchair into Welch's car. In a raised voice, Petersen stated, "No, it is not." Petersen then argued that "it is against the law for them to park on the sidewalk." Helms agreed with Petersen but said that it was also against the law for him to "ram" his chair into a car and that "they were dealing with [Welch at the scene]." Petersen then asked Helms "if [his] chief of police was in the office." Around that time, Helms received a phone call

21

from the officer on scene at the school. It was quickly determined that Helms was going to release Petersen, but that Welch intended to press charges at a later date. Petersen then asked Helms for his telephone number, to which Helms complied. Yet, Petersen continued to argue with Helms about the law and informed Helms that he would be filing a report against him for "harassment." Helms told Petersen that he was free to do that. After Helms gave Petersen the information he had requested, Helms told Petersen that he was "free to go." Peterson responded, "Thank you."

As evidenced by their brief conversation, counsel could have reasonably believed that Helms's questioning of Petersen was an investigative detention that took place near the scene of the incident and immediately following it. As the State points out, "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" does not amount to "custody." *See Miranda*, 384 U.S. at 477–78. Helms and Petersen's conversation was extremely brief, lasting about five minutes. It took place outside, not in a confined space. Helms did not tell Petersen that he could not leave, and he did not physically deprive Petersen of his freedom in any manner. Much of the conversation consisted of Petersen asking Helms questions and Petersen explaining to Helms his understanding of the law. Although Helms told Petersen that what he had done to Welch's vehicle amounted to criminal mischief and that Welch intended to file charges at some point, nothing in their conversation would result in an objectively reasonable person believing that they could not terminate the conversation or leave the scene. Consequently, we find that trial counsel's failure

22

to file a motion to suppress and his failure to object to the admission of the complained-of testimony did not amount to ineffective assistance of counsel.

We overrule Petersen's fourth point of error.

### E. Failure to Challenge the State's Punishment Evidence

Lastly, Petersen maintains that counsel was ineffective because he failed to object to the admission of State's Exhibits 7[13] and 9,[14] which were judgments and a charging instrument related to another case for which Petersen was on community supervision. According to Petersen, the State did not show by independent evidence that he was in fact the person who had been previously convicted of the crimes.

Article 37.07, Section 3(a)(1), of the Texas Code of Criminal Procedure states as follows:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404[15] and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could

---

[13]Exhibit 7 is a copy of Petersen's 2019 judgments and sentences out of Lamar County for the offenses of criminal mischief more than $750.00, but less than $2,500.00, and making a false report to a police officer. As a result of those convictions, Petersen was sentenced to one year in jail on the criminal mischief charge and six months in jail on the charge of making a false report to a police officer. The trial court suspended imposition of Petersen's sentences, placed him on two years of community supervision, and assessed restitution in the amount of $600.00.

[14]Exhibit 9 is the State's information, charging Petersen with the offenses referred to in State's Exhibit 7. The information alleges, in part, that, on December 10, 2018, Petersen "intentionally or knowingly damage[d] or destroy[ed] tangible property, to wit: a vehicle, by kicking it with his foot, . . . thereby caus[ing] pecuniary loss of $750 or more but less than $2500 to the said owner."

[15]Rule 404 of the Texas Rules of Evidence states, in part, "In a criminal case, a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." *See* TEX. R. EVID. 404(a)(2)(A).

23

be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Supp.).

During the punishment phase of the trial, Petersen testified that he had never been convicted of a felony, but that he had been previously convicted of a misdemeanor. He also conceded that, "[b]ack in 2019 [he] went through a [jury] trial in th[at] very courtroom . . . for damaging someone else's car at a crosswalk." While testifying, Petersen seemingly refused to take responsibility for his behavior for the pending incident and the 2018 incident, blaming both events on the drivers' actions. On cross-examination, the State asked Petersen, "[I]f this jury were to put you on probation and tomorrow you saw someone that you thought was in the crosswalk, you would do the exact same thing again, wouldn't you?" Petersen responded, "If I saw him, I would." Shortly after that, Petersen became argumentative with the State. The trial court intervened, stating, "Mr. Petersen, stop it. You answer his questions. Your attorney can ask you any follow-up questions. You understand me?" Petersen responded, "No, sir." After attempting to ask a few additional questions, the State concluded its questioning.

Luke Luttrell, the Director for the Lamar County Community Supervision Department, testified that he was familiar with Petersen because, in December 2019, Petersen had been placed on a two-year term of community supervision. Luttrell was responsible for supervising Petersen during that time. Luttrell was shown copies of State's Exhibits 7, 8, and 9, all of them related to Petersen's 2019 misdemeanor conviction and resulting sentences in cause number 66998, counts 1 and 2. As to State's Exhibit 7, Luttrell testified to the specifics of the judgments against Petersen for the offenses of criminal mischief and making a false report to a police officer. He

also testified about Petersen's sentences and various conditions of Petersen's community supervision. After Luttrell had identified Petersen in the courtroom, he confirmed that Petersen was the person who had been placed on community supervision as a result of having been convicted of criminal mischief and making a false report to a police officer. As to State's Exhibit 9, which was the misdemeanor information filed against Petersen, Luttrell read its contents to the jury. Finally, Luttrell was asked, "[I]f someone is on probation for an offense and then while on that probation commits the same or a similar offense," would you believe he would be a good candidate for community supervision for the subsequent offense. Luttrell responded, "Absolutely not, no."

On appeal, Petersen argues that the State did not show by independent evidence that he was in fact the person who had been previously convicted of the crimes. Petersen claims that, "because counsel did not object to [the] admission [of the State's exhibits], the State was permitted to effectively paint [him] as a repeat offender who had previously been charged, convicted, and punished for the same offense he currently stood trial for." We disagree.

Petersen testified on direct examination that he had been convicted of a misdemeanor because of a similar set of circumstances as the one for which he was being tried. Petersen also made it clear that he had no intention of changing his behavior in the event he found himself in a similar situation in the future. That evidence was relevant to Petersen's propensity to continue committing crimes, Petersen's character, and the jury's assessment of an appropriate sentence.[16]

---

[16]Petersen does not argue that his prior criminal record was irrelevant to the issue of punishment, and he does not contend that the information should have been excluded by virtue of Rule 403 of the Texas Rules of Evidence.

25

As to Petersen's contention that the State did not sufficiently link Petersen to the prior misdemeanor convictions, we again disagree. Petersen states that it was "incumbent upon the State to show, by independent evidence, that [he was] in fact the person previously convicted." *See Beck v. State*, 710 S.W.2d 205, 210 (Tex. Crim. App. 1986). Although an expert linking known fingerprints of a defendant with the prints on the judgment is the preferred method of proving identity, there are other ways to accomplish that connection. *Id.* Here, the State called Luttrell, who identified Petersen in the courtroom as the person he had been supervising on community supervision for the convictions and resulting sentences shown in State's Exhibits 7, 8, and 9.

Regardless of counsel's failure to object to State's Exhibits 7 and 9, the jury was made aware, via Petersen's own testimony, of a prior misdemeanor conviction under similar circumstances, his previous bad behavior, and his intentions regarding his future behavior. Counsel may have chosen not to object to the introduction of the State's exhibits because he believed that doing so would only emphasize his client's past bad behavior and his potential for future bad behavior. Consequently, we do not find that counsel performed in a deficient manner when he did not object to State's Exhibits 7 and 9.

We overrule Petersen's fifth point of error.

### III.  Conclusion

We affirm the trial court's judgement.

Scott E. Stevens
Justice

Date Submitted:     January 19, 2022
Date Decided:       April 14, 2022

Do Not Publish